NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1543
_____

BARRY KEYES,
Appellant

v.

CATHOLIC CHARITIES OF THE
ARCHDIOCESE OF PHILADELPHIA;
DON GUANELLA VILLAGE
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-01887)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2011

Before:  RENDELL, AMBRO and FISHER, Circuit Judges.

(Opinion Filed:  March 2, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

     Barry Keyes appeals the District Court for the Eastern District of Pennsylvania's

grant of summary judgment to Don Guanella Village ("Don Guanella") on plaintiff's

claim that he was discriminated against because of his sleep apnea in violation of the

Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA").[1]

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final order.

As we write solely for the parties, we recite only the facts relevant to our analysis. Don Guanella is a residential facility located in Springfield, Pennsylvania that houses a school for teenage boys suffering from mental retardation and other special needs and a center for developmentally disabled adult men. Keyes was employed by Don Guanella as a full-time registered nurse from October 2005 to September 2007. Soon after he was hired, he began coming to work late on a consistent basis. He informed Carol Thomas, the Director of Nursing, that he was having difficulty sleeping and that he suspected he had sleep apnea. In a series of meetings during January and February of 2007 with Frances Hagarty, the chief administrator of Don Guanella, and Thomas, Keyes received warnings and a two-day suspension due to his pattern of tardiness. During these discussions, Keyes again informed his supervisors that he was having trouble sleeping and suspected he had sleep apnea, but he did not request any type of accommodation for

---

[1] Plaintiff originally filed this lawsuit against Catholic Charities of the Archdiocese of Philadelphia and Don Guanella Village. However, in his response to defendants' Motion for Summary Judgment, plaintiff dropped his claim against Catholic Charities.

the problem.[2]  By buying a second alarm clock and having his wife wake him up, he was able to start arriving at work on time.

In September 2007, Keyes was involved in a verbal confrontation with another nurse whom he believed had abandoned her assignment.  After the dispute, Keyes called Thomas and threatened to resign if he had to work with the same nurse again.  He later sent Thomas a letter explaining that he had been experiencing symptoms of fatigue and had scheduled a sleep study.[3]  Within a few days, Hagarty and Thomas scheduled a meeting with plaintiff to discuss the dispute he had with his co-worker.  At the meeting, they asked Keyes if he needed time off to deal with his sleep apnea issues, but he declined.[4]  Keyes then told his supervisors that his heart and soul were not in his job anymore.  The next day, Hagarty called Keyes to inform him that, in light of the discussion the previous day, it was no longer in Don Guanella's best interest to employ Keyes at the facility.

---

[2] Keyes testified that his sleep apnea, though it caused him high blood pressure and daytime fatigue and interfered with his ability to do household chores, did not affect his ability to perform his duties as a registered nurse.  Thus, he never requested or felt that he needed reasonable accommodation in order to work.

[3] A factual dispute exists as to whether Keyes told his supervisors he suffered from sleep issues and suspected he had sleep apnea.  Thomas and Hagarty deny that they knew about this issue, but Keyes insists he told them about it on multiple occasions.  Because we view all facts in the light most favorable to the plaintiff in reviewing a motion for summary judgment, we, as the District Court did, assume that defendants were aware of Keyes's sleep problems and his suspicion that he suffered from sleep apnea.

[4] Keyes testified that after he mentioned his sleep apnea, the tone of the conversation changed and his employers' non-verbal signals indicated that they were going to terminate him.

Keyes testified that he started to experience symptoms of sleep apnea, the condition he claims was responsible for his termination,[5] around September 2005. He first sought medical care six months later in March 2006 with Dr. David Schwartz, an ear, nose and throat doctor. Dr. Schwartz recommended that Keyes schedule a sleep study but did not diagnose him with sleep apnea at this time. Keyes finally followed up on this advice in October 2007 – after his employment with Don Guanella had been terminated – by undergoing a sleep study with Dr. Gregory Breen. Dr. Breen diagnosed Keyes with sleep apnea and recommended that he use a CPAP (continuous positive airway pressure) machine. Keyes did not see Dr. Breen or any other medical professional again after this appointment; he claimed the CPAP machine cured his sleep apnea.

The District Court dismissed Keyes's claims under the ADA and the PHRA that Don Guanella discriminated against him because of his sleep apnea, finding that Keyes neither presented direct evidence of disability discrimination nor was he able to establish a prima facie case of disability discrimination under the *McDonnell-Douglas* burden-shifting framework. The District Court also noted that even if Keyes were able to establish a prima facie case of discrimination, Don Guanella proffered a legitimate non-discriminatory reason for Keyes's termination that was not a pretext for discrimination. Keyes appeals this dismissal.

We exercise *de novo* review over a district court's grant of summary judgment. *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). To affirm, we must find that there is no

---

[5] There is also a dispute between the parties as to whether Keyes was terminated or resigned. We assume for the purposes of this appeal that Keyes suffered an adverse employment action.

4

genuine issue of material fact when the facts are viewed in the light most favorable to the nonmoving party. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (internal citations omitted). To defeat a motion for summary judgment in a discrimination case, an employee must show either sufficient direct evidence or sufficient indirect evidence of discrimination. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004).

The parties agree that Keyes does not have any direct evidence that his supervisors at Don Guanella unlawfully discriminated against him. Because he proceeds based on circumstantial evidence, he must put forth evidence that meets the *McDonnell-Douglas* requirements. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Monaco*, 359 F.3d at 300. First, plaintiff must present sufficient evidence to make out a prima facie case of discrimination. 359 F.3d at 300. If the plaintiff presents such evidence, the burden shifts to the employer to set forth a legitimate nondiscriminatory reason for its actions. 411 U.S. at 802. If the employer prevails, the burden shifts back to plaintiff to produce evidence demonstrating that the defendant's proffered reasons were merely a

pretext for discrimination. *Id.* at 804.[6] We agree with the District Court that Keyes fails

the *McDonnell-Douglas* test at the first step; he cannot establish a prima facie case of

discrimination by a preponderance of the evidence. *See Lawrence v. Nat'l Westminster*

*Bank N.J.*, 98 F.3d 61, 66 n.3 (3d Cir. 1996).

For a plaintiff to establish a prima facie case of discrimination under the ADA, he

must demonstrate that he is: (1) disabled within the meaning of the ADA; (2) can

perform the essential functions of his job with or without reasonable accommodations;

and (3) has suffered an adverse employment action as a result of discrimination based on

his disability. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Tech.,*

*Inc.*, 134 F.3d 576 (3d Cir. 1998). A person qualifies as "disabled" under the ADA if he:

(1) has a physical or mental impairment that substantially limits one or more of his major

life activities; (2) has a record of such an impairment; or (3) is regarded as having such an

impairment. 42 U.S.C. § 12102(2).

The District Court was correct to conclude that Keyes fails to prove that his

alleged "disability" fulfills any one of these elements. First, Keyes's sleep apnea did not

substantially limit one or more of his major life activities. Pointing to the sleep study he

underwent after his termination from Don Guanella,[7] Keyes claims that his apnea

---

[6] Because we apply the same analysis to claims brought under the PHRA as we do
to ADA claims, the arguments supporting dismissal of Keyes's ADA claims are equally
applicable to his PHRA claims. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d
Cir. 2002).

[7] Dr. Breen's study noted that Keyes's "sleep efficiency," the percentage of one's
total time in bed spent sleeping, was 77.3% and that plaintiff had "severe sleep disordered
breathing" as a result of his apnea. The report also recommended that plaintiff sleep with

substantially limited his major life activities of breathing and sleeping. Under the guidelines provided by the EEOC, we apply a two-step analysis to determine whether an individual is substantially limited in one or more major life activities. *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 783 (3d Cir. 1998). First, we ask whether the individual is "substantially limited in any major life activity other than working, such as walking, seeing, or hearing," by comparing the effect of the impairment on that individual with its effect on the average person in the general population. *Id.* (citing 29 C.F.R. Pt. 1630, App. § 1630.2(j)). If we find that the individual is not so limited, we then ask whether the individual is substantially limited in the major life activity of working. *Id.*

Here, the District Court properly found that the sleep study, combined with plaintiff's testimony that he sometimes woke up "short of breath" and "gasping for air," were insufficient to establish that Keyes's sleep apnea substantially impaired his major life activity of breathing. The EEOC regulations require courts determining whether a substantial limitation exists to consider the "nature and severity of the impairment," the "duration or expected duration of the impairment," and the actual or expected "permanent or long term impact" resulting from the impairment. 29 C.F.R. § 1630.2. Keyes's present assertion that his sleep apnea symptoms were severe is undermined by his delay in seeking medical care for his symptoms until six months after first noticing them and suspecting that he might be suffering from sleep apnea. Further, there is no evidence that

---

a CPAP machine to relieve his sleep apnea symptoms. Plaintiff testified that this machine cured his sleep apnea and allowed him to get restful sleep.

his breathing was impaired while he was at work, and plaintiff himself concedes that using the CPAP machine fully cured any nighttime impairment; indeed, after beginning to use the machine, he did not once return to a doctor regarding his sleep disorder. We are thus not persuaded that the breathing impairment caused by his sleep apnea was of sufficient duration or severity to constitute a substantial limitation on his breathing.

We also agree with the District Court's conclusion that plaintiff's sleep apnea did not impair his major life activity of sleeping. Again, aside from the sleep study showing that plaintiff was asleep 77.3% of the time he was in bed and his testimony that he had trouble sleeping, there is little evidence that his sleep was severely disrupted. Further, the CPAP machine fully cured his sleep issues. Plaintiff's reliance on *Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417 (E.D. Pa. 2002), where the court found sufficient evidence that plaintiff's sleep was substantially impaired by her sleep apnea, is misplaced. There, plaintiff testified to waking up five to six times a night and falling asleep several times a day – including while she was transferring phone calls at work and driving to work. Her disorder was unresponsive to a CPAP machine, tonsil surgery, oral medication and pure-oxygen therapy. *Id.* at 434. Keyes's sleep disorder is not, as he depicts it, an "exact" analogue of the plaintiff in *Peter*'s disorder; the restrictions on Keyes's sleep are mild by comparison and have proven to be easily remedied.

Having concluded that Keyes was not substantially limited in a major life activity other than working due to his sleep apnea, we ask whether his sleep apnea substantially limited his ability to work. To be substantially limited in the major life activity of working, "one must be precluded from more than one type of job, a specialized job, or a

particular job of choice." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999). Plaintiff conceded in his testimony that his sleep apnea in no way affected his ability to perform his duties at Don Guanella and that he excelled at his job. Thus, we agree with the District Court that plaintiff's sleep apnea substantially limited neither his ability to work nor perform any other major life activities.

Second, Keyes fails to establish that he had a record of any condition that would be considered a disability under the ADA. *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001). Finally, he cannot show that he was "regarded as" having a disability under 42 U.S.C. § 12102(2)(C), which requires plaintiff to establish that he had a nonlimiting impairment that defendants mistakenly believed substantially limited a major life activity. *Id.* at 514; *Sutton*, 527 U.S. at 489. Even if, viewing the facts in the light most favorable to Keyes, we assume that Keyes did discuss his sleep apnea with his supervisors, *see supra* n.3, their mere awareness of his impairment is "insufficient to demonstrate either that the employer[s] regarded [Keyes] as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). To prevail in his "regarded as disabled" argument, plaintiff would have to show that his employer misinterpreted information about his limitations to conclude that he was unable to perform a "wide range or class of jobs." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 757 (3d Cir. 2004). *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 192 (3d Cir. 1999) ("An employer who simply, and erroneously, believes that a person is incapable of performing a *particular* job will not be liable under the ADA.") (emphasis added). Plaintiff's speculative perception that his

9

supervisors changed their attitude towards him when they heard about his sleep apnea, for proof of which he points to his supervisors' "non-verbal reactions," in no way proves that his supervisors viewed him as unable to perform a wide range of work. The District Court properly found that plaintiff did not meet this bar.

Since we have decided that plaintiff has failed to prove he was "disabled" under the ADA or the PHRA, we need proceed no further in the *McDonnell-Douglas* analysis.[8] Due to his failure to prove a disability, Keyes cannot make out a prima facie case of discrimination under the ADA. Accordingly, we affirm the District Court's grant of summary judgment to defendant.

---

[8] We note that the District Court was correct in concluding that, even if Keyes could somehow establish a prima facie case of discrimination, defendants could likely articulate a legitimate, nondiscriminatory reason for Keyes's termination that was not a pretext for discrimination. Shortly before his termination, Keyes told his supervisors that his heart was no longer in his work. Such a statement, from someone whose job it is to take care of special needs' patients, may give an employer legitimate grounds to terminate the employee. Finally, we agree with the District Court that plaintiff does not meet the heavy burden of establishing that the legitimate, nondiscriminatory reason proffered by defendant was pretextual. *See Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994) (holding that, to establish pretext, a plaintiff must point to some evidence from which a reasonable factfinder could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action). Plaintiff does not put forward sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," *id.* at 765, in defendant's proffered legitimate reason that a rational factfinder would find that reason unworthy of credence. Keyes's attempt to establish pretext fails.