**RENA BRODHURST, Appellant/Respondent**
**v.**
**JEFFREY FRAZIER, Appellee/Petitioner**

S. Ct. Civil No. 2011-0003
Supreme Court of the Virgin Islands
September 12, 2012

JOEL H. HOLT, ESQ., St. Croix, USVI, *Attorney for Appellant.*

ROBERT A. WALDMAN, ESQ., Hamm Law Firm, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 12, 2012)

HODGE, *Chief Justice.* Appellant Rena Brodhurst appeals from the Superior Court's December 22, 2010 Order,[1] which entered summary judgment in favor of Appellee Jeffrey Frazier on his petition for declaratory judgment. For the reasons that follow, we reverse the grant of summary judgment and remand the matter to the Superior Court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Frazier filed a petition for declaratory judgment in the Superior Court on September 1, 2006. In his petition, Frazier stated that he had purchased Plot No. 119 Vista Concordia by warranty deed on December 16, 2003 from D.A. Lomax and his wife. Pursuant to this deed, the Lomaxes had conveyed to Frazier "Plot No. 119 . . . as more fully shown on OLG Drawing No. 4674," but "subject . . . to covenants, easements, and restrictions of record and all applicable laws and regulations." (J.A. 19.) According to Frazier, OLG Drawing No. 4674 showed a "30' Joint Use Driveway" extending from Plot No. 119 through the bottom of Plot No. 121, a parcel that the Lomaxes had conveyed to Brodhurst through a warranty deed on September 19, 2005, which contained language similar to the December 16, 2003 deed, but with respect to Plot No. 121.[2] Frazier

---

[1] Although signed by the Superior Court judge on December 21, 2010, the Clerk of the Superior Court did not enter the order until December 22, 2010. *See* V.I.S.CT.R. 5(a)(9) ("A judgment or order is entered within the meaning of this Rule when it is entered in the docket in compliance with Superior Court Rule 49.").

[2] It appears that the only significant difference between the December 16, 2003 deed and the September 19, 2005 deed — other than the parcels involved — is that the September 19, 2005 deed provides that the conveyance is "subject . . . to all easements, covenants, restrictions, and rights of way of public record," (J.A. 21), while the December 16, 2003 deed stated that it was "subject . . . to covenants, easements, and restrictions of record and all applicable laws and regulations." (J.A. 19.)

further alleged that the "30' Joint Use Driveway" had been established to provide him with access to Plot No. 119 — which was otherwise landlocked — and constituted an easement that Brodhurst had refused to honor.

On November 6, 2007, Frazier moved for summary judgment, relying upon — among other authorities — section 2.13 of the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES (2000) to support his claim that the phrase "Plot No. 119 . . . as more fully shown on OLG Drawing No. 4674" in the December 16, 2003 deed created an easement in the "30' Joint Use Driveway." Frazier filed, as an exhibit to his motion, an affidavit from Lomax stating that he intended for the "30' Joint Use Driveway" to be an easement so that the owner of Plot No. 119 would be able to access a public road, as well as an affidavit from R.W. Heffington — the surveyor who prepared and drew OLG Drawing No. 4674 — stating that the drawing was intended to reflect the "30' Joint Use Driveway" as an easement to be shared by Plot Nos. 119 and 121 to enable ingress and egress. As further support, Frazier submitted several unrecorded maps of the same properties that he argued clearly depicted an easement.

In her opposition, Brodhurst contended that she lacked notice that any easement existed at the time she purchased Plot No. 121. Through an affidavit attached as an exhibit to her opposition, Brodhurst stated that she "ha[s] purchased various properties on St. Croix from time to time over the past 20 years" and is thus "familiar with the documents generally involved in such transactions," but that OLG Drawing No. 4674 differed from similar maps because it "has multiple lines drawn across the eastern portion of [the] property, none of which are clear and none of which cause[d] [her] to believe that there was an easement across this property." (J.A. 84.) Additionally, Brodhurst noted that the alleged easement had never been recorded and was not specifically mentioned in the September 19, 2005 warranty deed, and stated that she had never seen any of the unrecorded maps relied upon by Frazier. (*Id.*) In his reply to the opposition, Frazier argued, among other things, that the Superior Court should disregard Brodhurst's affidavit because it was an "unfounded declaration." (J.A. 94.)

After Frazier filed his reply, the matter remained dormant in the Superior Court for more than two years, despite Frazier filing several documents requesting a ruling. In a December 22, 2010 Order, the Superior Court, relying solely on section 2.13 of the RESTATEMENT,

granted Frazier's motion for summary judgment on the grounds that (1) the Lomaxes intended to provide an easement by referencing OLG Drawing No. 4674 in both deeds, and (2) the easement would benefit both Plot No. 119 and Plot No. 121. The Superior Court stated that it was "incredulous" of the statements in Brodhurst's affidavit "because reason dictates that any reasonable person would notice and be put on actual notice of the clearly labeled words: '30' Joint Use Driveway,' " that "it would be incumbent upon someone with experience in purchasing properties for over 20 years to notice and take account of the Joint Use Driveway," and that "[t]here is no question then that [Brodhurst] understands that easements can be shown on maps." (J.A. 12.) Finally, the Superior Court held that Brodhurst "merely stated in her affidavit that the map does not show an easement, and she did not believe there was an easement upon purchase," which the Superior Court characterized as reliance on her pleadings and "mere allegations or denials." (J.A. 13.) Brodhurst timely filed her notice of appeal on January 18, 2011.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's December 22, 2010 Order constitutes a final judgment, this Court possesses jurisdiction over Brodhurst's appeal. *See, e.g., Browne v. People,* 56 V.I. 207, 216 (V.I. 2012).

"This Court exercises plenary review of a Superior Court's grant of summary judgment." *Williams v. United Corp.,* 50 V.I. 191, 194 (V.I. 2008) (citing *Maduro v. American Airlines, Inc.,* S. Ct. Civ. No. 2007-029, 2008 V.I. Supreme LEXIS 24, at *7 (V.I. Feb. 28, 2008) (unpublished)). "On review, we apply the same test that the lower court should have utilized." *Id.* "Because summary judgment is a drastic remedy, it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Id.* (quoting former wording of FED. R. CIV. P. 56(c)). "When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving

party, and we must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' " *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 664 (V.I. 2011) (quoting *Williams*, 50 V.I. at 194-95). "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.*

## B. The Summary Judgment Award

In her appellate brief, Brodhurst contends that the Superior Court should not have granted Frazier's motion for summary judgment because (1) OLG Drawing No. 4674 is not "clear" and thus the Superior Court could not conclude that the map clearly identified an easement; and (2) the Superior Court made impermissible credibility determinations when it essentially disregarded her affidavit. We agree.

In its December 22, 2010 Order, the Superior Court relied upon section 2.13 of the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES, which reads, in full, as follows:

> In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, if the grantor has the power to create the servitude, and if a different intent is not expressed or implied by the circumstances:
>
> (1) A description of the land conveyed that refers to a plat or map showing streets, ways, parks, open space, beaches, or other areas for common use or benefit, implies creation of a servitude restricting use of the land shown on the map to the indicated uses.
>
> (2) A description of the land conveyed that uses a street, or other way, as a boundary implies that the conveyance includes an easement to use the street or other way.

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 (2000). Assuming without deciding that this provision is applicable to this case,[3] we note that

---

[3] The Superior Court, in its December 22, 2010 Order, found that section 2.13 of the RESTATEMENT applied to this dispute by virtue of title 1, section 4 of the Virgin Islands Code, which provides that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."

the comments to the Restatement clarify that, if a party submits evidence that the requirements of section 2.13 are met, there is only an inference that the parties intended for there to be an easement, which any other party may rebut by pointing to evidence of a contrary intent, with the strength of the evidence needed to rebut the inference of an easement varying based on the strength of the evidence — particularly the explicitness of the map — used to support the inference. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 cmt. b; *see also Boucher v. Boyer*, 301 Md. 679, 484 A.2d 630, 635 (1984) ("As we see it, a deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a *rebuttable presumption* that the parties intended to incorporate the right of way in the transaction.") (emphasis added). However, "the most important indicators of the grantor's intent [are] the appearance of the subdivision map and the language of the original deeds." *Heim v. Conroy*, 211 A.D.2d 868, 621 N.Y.S.2d 210, 211 (N.Y. App. Div. 1995) (internal quotation marks omitted). This necessarily imposes a high burden on the party claiming an implied easement, given the general preference against encumbering property. *See, e.g., Davey v. Artistic Builders, Inc.*, 263 S.C. 431, 211 S.E.2d 235, 237 (1975) ("restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of free use of the property").

■ Nevertheless, regardless of whether section 2.13 applies to this matter, Virgin Islands law imposes a similar notice requirement with respect to enforcing an unrecorded servitude. Pursuant to statute, "[e]very

However, nearly a year after the Superior Court rendered its decision — and more than five months after this appeal was submitted for a decision — this Court, in response to a certified question from the United States Court of Appeals for the Third Circuit, held

that the adoption of section 21 of title 4 in 2004 supersedes and alters section 4 of title 1, which is one of the initial provisions of the Virgin Islands Code that were adopted in 1957, and that therefore this Court and — to the extent not bound by precedent, the Superior Court — may determine the common law without automatically and mechanistically following the Restatements.

*Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011) (citations omitted). In *Banks* this Court also clarified that when the parties to an appeal do not "expressly request that this Court exercise its inherent power to adopt a different rule . . . this Court is not inclined to do so *sua sponte* without receiving the benefit of briefing by the parties." *Id.* at 984 n.9.

As noted later in this opinion, reversal of the summary judgment is required regardless of whether section 2.13 applies to this case because a genuine issue of material fact exists as to whether Brodhurst had notice of the alleged unrecorded easement pursuant to section 124 of title 28. On remand, however, the parties may brief the Superior Court as to whether it should apply section 2.13, or apply a different common law rule.

conveyance of real property hereafter made within the Virgin Islands which is not filed for record shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance is first duly recorded." 28 V.I.C. § 124. This Court and other Virgin Islands courts have consistently interpreted this enactment as a race-notice statute, in which the failure to record an easement or other conveyance renders it unenforceable against a subsequent purchaser, but only if that purchaser lacks notice of the encumbrance. *See Harvey v. Christopher*, 55 V.I. 565, 574-75 (V.I. 2011) (collecting cases). For purposes of section 124, "[n]otice may be actual or constructive, and actual notice may be express or implied." *Netsky v. Sewer*, 205 F. Supp. 2d 443, 457 (D.V.I. 2002). "Constructive notice is a legal fiction designed to impute notice to a person not having actual notice where that person has knowledge of certain facts which should lead him to the ultimate fact." *Id.*

Here, it is undisputed that Brodhurst purchased Plot No. 121 for consideration, and that neither the Lomaxes nor Frazier ever recorded the purported easement with the Recorder of Deeds before Brodhurst purchased and recorded her interest. Likewise, the record contains no evidence that the Lomaxes had told Brodhurst that Plot No. 121 was encumbered, or that Brodhurst otherwise possessed actual notice of an easement.[4] Thus, assuming that an implied easement exists, it is only enforceable against Brodhurst if OLG Drawing No. 4674 — which was referenced in the deed conveying Plot No. 121 — was sufficiently clear to provide her with constructive notice.

In this case, the Superior Court erred when it held that OLG Drawing No. 4674 (depicted below) is so unambiguous that one can interpret its meaning at the summary judgment stage:

---

[4] In its December 22, 2010 Order, the Superior Court heavily relied on the contents of the Lomax affidavit to hold that an easement by implication existed pursuant to section 2.13, since Lomax stated in his affidavit that he intended to create an easement. However, even if section 2.13 is applicable to this matter and the Superior Court could have properly concluded, at the summary judgment stage, that an implied easement was created — which we do not hold — Lomax makes no representation in his affidavit that he ever told Brodhurst that an easement existed.

 While the text "30' Joint Use Driveway" does appear on the map, the arrow next to that text stops on the solid line setting the boundary between Plot No. 121, Plot No. 123, and Plot No. 119 and does not extend into Plot No. 121 itself, which could imply that the "30' Joint Use Driveway" text is referring to the boundary line rather than something separate that is completely encompassed within Plot No. 121, particularly given that the Lomax affidavit states that the line immediately above the boundary line is a " 'leader-line' denoting the location of Survey Point 'UU' " that has no relevance to the "30' Joint Use Driveway." (J.A. 53.) Although there is an arrow that points to a dotted line on Plot No. 121 — which the Superior Court characterized as "marking the boundary of the

372

Joint Use Driveway" (J.A. 13) — there is no text on the map that explains the purpose of the arrow or the dotted line, let alone anything that would unquestionably place someone on notice that the arrow and the dotted line have any relevance to the "30' Joint Use Driveway" text. Given that the map is unclear, the Superior Court should not — at the summary judgment stage — have interpreted the meaning of the lines. Instead, it should have permitted the finder of fact, who would be able to weigh the evidence, to perform this task at trial.[5] *See, e.g., Hamilton v. CCM, Inc.*, 274 S.C. 152, 263 S.E.2d 378, 381 (1980) (wavy lines on map are ambiguous); *Robidoux v. Pelletier*, 120 R.I. 425, 391 A.2d 1150, 1155 (1978) (noting that meaning of road represented by dotted line, when other roads depicted with solid lines, constituted factual inquiry). *See also, e.g., Stockbridge v. Gemini Air Cargo, Inc.*, 269 Va. 609, 618, 611 S.E.2d 600 (2005) (summary judgment "is a drastic remedy" and "should not be used to short-circuit litigation by deciding disputed facts

---

[5] As noted above, the fact that OLG Drawing No. 4674 is — at best — ambiguous precluded entry of summary judgment in favor of Frazier. Yet, we cannot ignore that the Superior Court further misapplied the summary judgment standard when it weighed the evidence to disregard Brodhurst's affidavit. The Superior Court noted that "[Brodhurst] has merely stated in her affidavit that the map does not show an easement, and she did not believe there was an easement upon purchase. However, [Brodhurst] may not rely on [her] pleadings, mere allegations or denials, but must present evidence by affidavit or otherwise." (J.A. 13.) As additional grounds for disregarding the affidavit, the Superior Court stated that it "is incredulous of these statements because reason dictates that any reasonable person would notice and be put on actual notice of the clearly labeled words: '30' Joint Use Driveway.' " (J.A. 12.) The Superior Court further concluded that because Brodhurst possessed prior experience with OLG maps, "there is no question then that [she] understands that easements can be shown on such maps." (*Id.*)

Had Brodhurst simply stated, without more, that no easement exists, the Superior Court would have been correct to disregard the affidavit. But Brodhurst did not make a legal conclusion in her affidavit — she stated, albeit succinctly, that she had purchased various properties on St. Croix over the past 20 years and she did not believe OLG Drawing No. 4674 depicted an easement because it was inconsistent with how easements have been depicted on all the prior OLG maps she has reviewed. *See UTELCOM, Inc. v. Bridges*, 77 So.3d 39, 53 (La. Ct. App. 2011) ("[T]he mere fact that [a corporate officer's] assertions in the affidavit track the incidents of taxation listed in [applicable state statutory provisions] does not render them impermissible legal conclusions, as the Department contends; rather, the statements are simply factual statements based on [the affiant's] personal knowledge and experience."). Moreover, Brodhurst did not state that a map can never show an easement, and never disputed

373

without permitting the parties to reach a trial on the merits"). Therefore, we reverse the December 22, 2010 Order.[6]

## III. CONCLUSION

Even if an implied easement had been created pursuant to section 2.13 of the RESTATEMENT, section 124 of title 28 of the Virgin Islands Code precludes Frazier from enforcing the unrecorded encumbrance against Brodhurst if she lacked actual or constructive notice before she recorded her interest in Plot No. 121. Since OLG Drawing No. 4674 is not so clear and unambiguous as to warrant the trial court in concluding, as a matter of law, that there was no jury issue as to whether it was sufficient to have alerted Brodhurst that an easement may exist over the property, the Superior Court erred when it granted Frazier's motion for summary judgment. Accordingly, we reverse the December 22, 2010 Order and remand this matter to the Superior Court for further proceedings consistent with this Opinion.

SWAN, *Associate Justice*, dissenting. Appellant, Rena Brodhurst, asserts that the trial court erred when it granted Appellee's Motion for Summary Judgment upholding a claim for recognition of an easement across her property which provides access to Appellee's property. Brodhurst further asserts that there were outstanding issues of material fact concerning the existence of the alleged easement; therefore, she

---

that the text "30' Joint Use Driveway" appears on OLG Drawing No. 4674. Rather, Brodhurst, in her affidavit, attempted to convey that this particular map was different from the OLG maps she has dealt with in the past, in that it contained numerous lines that she could not interpret as an easement. Accordingly, we take this opportunity to remind the Superior Court that an affidavit from a non-moving party constitutes evidence that can be considered at the summary judgment stage, and should not be rejected or given less weight than other evidence simply because it was produced by a party to the litigation.

[6] In his initial November 6, 2007 motion for summary judgment, Frazier had also argued that he was entitled to an easement by necessity pursuant to section 2.15 of the RESTATEMENT. However, we decline to address this argument in the first instance, given that the Superior Court failed to consider it in its December 22, 2010 Order. *See United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 720 n.16 (V.I. 2011). We advise the parties that our failure to reach this issue — as well as our decision not to determine whether section 2.13 should be adopted by Virgin Islands courts in light of Banks or whether the requirements for an implied easement under section 2.13 have been satisfied — should not preclude them from litigating these issues on remand to the Superior Court.

argues that the motion for summary judgment should have been denied. I conclude that Brodhurst failed to raise any genuine issues of material fact in opposition to the Motion for Summary Judgment. Because I conclude that the majority's opinion is clearly against the weight of the evidence presented to the Superior Court, which included the affidavits setting forth the clear intent of the developers to create an easement, Department of Public Works' requirements mandating the creation of an easement across Brodhurst's property, and numerous maps and drawings clarifying the existence of an easement, as well as contrary to established case law precedent, I would affirm the trial court's Order granting Appellee's Motion for Summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

The salient facts are as follows: On December 16, 2003, Appellee, Jeffrey Frazier, acquired title to Plot No. 119 located in Estate Concordia on St. Croix, U.S.V.I. (Frazier's property) (J.A. at 8). Plot No. 121 (Brodhurst's property), which is contiguous to Frazier's Plot 119, was acquired by the Appellant, Rena Brodhurst, approximately two years later on September 19, 2005. (*Id.*) Each party received a warranty deed that included OLG[1] Drawings and other documents that delineated the boundaries and other features of their respective plots. (*Id.*) Importantly, because of the shape and location of Brodhurst's property, Frazier's property is completely landlocked with no access to the Estate Concordia main road (Road Plot 120). Therefore, Frazier can only access his plot from the main road through Brodhurst's plot.

On September 2, 2006, Frazier filed a Petition for Declaratory Judgment, concerning a purported easement that traverses Brodhurst's plot. (*Id.* at 9.) The easement is a "30' [j]oint [u]se [d]riveway" that is necessary to access Frazier's property because, without the easement, his property lacks an access route. (*Id.* at 12.) Brodhurst asserts that there is no clear indication on the OLG drawings of an easement, or that a thirty-foot joint use driveway had existed when she acquired title to her property. Nevertheless, Brodhurst offered Frazier access to his property across another part of her property, in substitution for the 30' joint use driveway. (Appellant's Br. 5.)

---

[1] The record does not inform what "OLG" designates. However, the Department of Planning and Natural Resources confirms that OLG stands for "Office of Lieutenant Governor." These drawings are required for registration with the Office of Lieutenant Governor's Cadastral section which issues these maps with a numeric designation.

Frazier approached Brodhurst on innumerable occasions in an attempt to explain that their individual deeds to their plots made reference to an OLG Drawing No. 4674 which illustrates and confirms the existence of an easement. (J.A. at 15.) However, the parties were unable to agree on the existence of an easement. Both Frazier's and Brodhurst's deeds were conveyed by the same grantors, D.A. Lomax and Deborah Lomax, and include a statement that declares the conveyance is, "[s]ubject, [h]owever, to covenants, easements, and restrictions of record and all applicable laws and regulation[.]" In an affidavit,[2] D.A. Lomax informs that there is an easement "in, over and through" Brodhurst's property to "remedy the landlocked status of 'New Plot 119' " in accordance with government regulations. (*Id.* at 52.) He further avers that the joint use driveway exists as an easement for the benefit of both plots of land. (*Id.* at 11-12 and 52.)

---

[2] Lomax's affidavit states in relevant part that:

I, D.A. "Al" Lomax, being duly sworn, depose and state:

7. After the subdivision of (the original) plot 119 as described above, the remaining piece of Plot 119 ("New Plot 119") became a landlocked parcel, without access to Road Plot No. 120, which serves as the roadway for all parcels depicted on Drawing No. 4674.

8. In order to get government approval for the subdivision of plot 119 into "New Plot 119," and Plot Nos. 121, 122, and 123, I was required to provide "New Plot 119" with an easement for access to and from Road Plot 120.

9. To remedy the landlocked status of "New Plot No. 119," as advised by Whit Heffington, I instructed Whit Heffington to provide "New Plot No. 119" with a thirty foot (30') wide easement in, over and through Plot 121. This 30' wide easement is clearly marked on Drawing No. 4674 and is referenced to thereon as the "30' Joint Use Driveway." I refer to this easement herein as the "*Joint Use Driveway.*"

10. In planning the Joint Use Driveway, Whit Heffington and I personally walked that certain area now described on O.L.G. Drawing No. 4674 ("Drawing No. 4674") as the "30' Joint Use Driveway" in late January 1991. The specific location of the easement known as the "30' Joint Use Driveway" was selected because of the terrain slope and ease of access.

11. I intended to provide "New Plot No. 119" and Plot 121 with the benefit of the Joint Use Driveway for access to and from Road Plot 120. I intended the Joint Use Driveway to exist as an easement in, over and through Plot 121, for the benefit of "New Plot No. 119" and Plot 121.

12. The Joint Use Driveway consists of the land located inside the following four boundaries depicted on Drawing No. 4674, as revised and duly recorded on August 15, 1991: (1) the boundary line between New Plot 119 and Plot 121 on the north; (ii) the boundary line between Plot Nos. 121 and 123 on the east; (iii) the boundary line between Plot No. 121 on the west.

Frazier moved the trial court for summary judgment on the basis that there were no genuine issues of material fact concerning his right to a declaratory judgment. (*Id.* at 31.) Brodhurst urged the trial court to deny Frazier's Motion for Summary Judgment, without prejudice, pending completion of discovery. (*Id.* at 90.) Brodhurst asserted that she needed discovery responses from Frazier in order for her to respond to Frazier's Motion for Summary Judgment. (*Id.*) The requested responses to Brodhurst's discovery requests were provided to her. (*Id.*)

On February 14, 2008, the parties entered into a stipulation to extend the deadline for discovery until July 1, 2008 for completion of all factual discovery. (*Id.*) Following the expiration of the discovery deadline, Brodhurst responded to Frazier's Motion for Summary Judgment with her

13. Consistent with the sequentially running lines above that mark survey points "GG" through "TT," the solid line that runs triangular through the Joint Use Driveway is a "leader-line" denoting the location of Survey Point "UU." The leader-line denoting the location of Survey Point "UU" does not divide the Joint Use Driveway, such being clearly marked as "30' Joint Use Driveway" with an arrow pointing directly at the eastern boundary of the Joint Use Driveway in the vicinity of Survey Point "UU" and with a second arrow located on Plot 121 pointing down at the western boundary of the Joint Use Driveway. The Joint Use Driveway exists solely on Plot No. 121.

14. Pursuant to that certain Warranty Deed executed as of December 16, 2003, by and between myself and my wife, Deborah (as "Grantors") Jeffrey W. Frazier (as "Grantee") ("Petitioner's Deeds"), my wife and I conveyed New Plot 119 to Mr. Frazier. My understanding of Virgin Islands law was that in order to provide Mr. Frazier and all successive owners of new Plot 119 with perpetual rights to use the Joint Use Driveway, Petitioner's Deed must reference the map upon which such easement is drawn. Thus, Petitioner's Deed contains a description of New Plot 119 that incorporates by reference the final Drawing No. 4674.

15. Pursuant to that certain Warranty Deed executed as of September 19, 2005, by and between myself and my wife, Deborah (as "Grantors") and Rena Brodhurst (as "Grantee") ("Respondent's Deed"), my wife and I conveyed Plot 121 to Ms. Brodhurst. My Understanding of Virgin Islands law was that, in order to provide Ms. Brodhurst and all successive owners of Plot 121 with actual notice of the existence of the Joint Use Driveway as an easement in, over and through Plot 121, Respondent's Deed must reference the map upon which such easement is drawn. Thus, Respondent's Deed contains a description of Plot 119 that incorporates by reference Drawing No. 4674.

16. If called to testify in this matter, I would state the facts as set forth herein.

377

affidavit, with a copy of her Warranty Deed, and with a copy of the OLG Drawing No. 4674. In opposition to the Motion for Summary Judgment, Brodhurst asserts in her affidavit, "I have purchased various properties on St. Croix from time to time over the past 20 years, and is [sic] familiar with documents involved in such transactions." She also states, "the OLG Drawing No. 4674 does not show an easement across my property either, as the map has multiple lines drawn across the eastern portion of my property, none of which are clear." (*Id.* at 12.)

The trial court considered Brodhurst's extensive experience as a purchaser of property and concluded that — with her experience — she should have been able to conclude that easements can be depicted on OLG drawings. (*Id.*) The trial court also concluded that Brodhurst should have noticed from the maps and other documents available to her that Frazier's property lacks a path for ingress and egress, raising the issue of access between the two contiguous plots. (*Id.*)

On December 21, 2010, the trial court granted Frazier's Motion for Summary Judgment and concluded that a reasonable finder of fact would not deny the existence of the thirty-foot joint use driveway or an easement that is indisputably illustrated on the OLG Drawing No. 4674. (*Id.* at 13.)

## II. ISSUES

The pivotal issue on appeal is whether the trial court erred in finding that there was no genuine issue of material fact concerning the existence of an easement for Frazier's benefit over Brodhurst's Plot No. 121.

## III. STANDARD OF REVIEW

This Court reviews *de novo* a trial court's grant of summary judgment, including all conclusions of law. *Peter Bay Homeowners Association, Inc. v. Stillman*, 294 F.3d 524, 532 (3d Cir. 2002). A trial court's factual findings are reviewed for clear error. *See Bernhardt v. Bernhardt*, 51 V.I. 341, 347 (V.I. 2009) and *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 285 (3d Cir. 2005). As the Court recently stated:

> This Court exercises plenary review of a Superior Court's grant of summary judgment. On review, we apply the same test that the lower court should have utilized. Because summary judgment is a drastic

remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party, and we must take the non-moving party's conflicting allegations as true if supported by proper proofs. To survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance. Importantly, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial.

*Simpson v. Golden Resorts, LLLP*, 56 V.I. 597, 605 (V.I. 2012) (citations and internal quotation marks omitted).

## IV. DISCUSSION

Brodhurst argues (1) that the trial court improperly granted summary judgment because there existed a genuine issue of material fact as to the meanings of the lines and words on the OLG Drawing No. 4674; (2) that her Warranty Deed and the OLG Drawing No. 4674 are the only documents which should be considered to determine whether an easement exists and that these documents fail to identify an easement with "sufficient clarity"; (3) that the trial court erred in relying exclusively on the OLG drawing in determining the existence of a triable issue and erred by not holding an evidentiary hearing; and (4) that the trial court improperly made a credibility determination when it rejected Brodhurst's affidavit. I will examine each of Brodhurst's arguments in determining whether the trial court erred in granting summary judgment in favor of Frazier.

Generally, summary judgment should be granted after an adequate period for discovery has passed if the record reflects that: (1) there are no genuine issues, (2) as to any material fact, and (3) the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) and *Beard v. Banks*,

548 U.S. 521, 529, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006). The party moving for summary judgment has the burden of demonstrating a clear absence of genuine issues of material fact. *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2009). The Court must grant all reasonable inferences from the evidence on record in favor of the nonmoving party in considering whether there are any disputed issues of material fact. *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011).

In his Motion for Summary Judgment, Frazier asserts that the OLG Drawing No. 4674 designates an easement over the far eastern edge of Brodhurst's property. (J.A. 36-37.) Additionally, Frazier provided additional supplemental evidence in support of the existence of the easement, including affidavits from the Developer and from the Land Surveyor, confirming their intent to create an express easement in, over, and through Brodhurst's property. Frazier also submitted supplementary maps and drawings of the subdivision which corroborate the existence of an easement on the eastern portion of Brodhurst's property as the OLG drawing indicates. Even viewing this evidence in favor of Brodhurst, there is no interpretation that raises any genuine material issue about the validity of this easement. The trial court ruled, and this Court should confirm, that the evidence in the record sufficiently establishes the existence of an easement across Brodhurst's property and that she has raised no material fact about its validity.

### A. The Deed, the OLG Drawing, and the Circumstances Surrounding the Conveyances Gave Express Notice of an Easement over Brodhurst's Property.

Frazier asserted, and the trial court agreed, that the parties' deeds and the OLG drawing adequately established the existence of an easement across the easternmost portion of Brodhurst's property with sufficient clarity. (J.A. at 11.) However, Brodhurst appeals, insisting that an easement across her property cannot possibly exist, because neither her deed nor the OLG drawing referenced in her deed identify a right of way across her property with sufficient clarity to create an easement as a matter of law. (Br. of Appellant 7.) Additionally, Brodhurst seems to suggest that the trial court should not consider the multiple unrecorded maps submitted by Frazier, because she was unaware of the existence of these maps and received no notice of them when she purchased Plot

No. 121. (Br. of Appellant 5.) I will first determine whether Brodhurst's deed and the pertinent OLG drawing are sufficient to create an easement and are sufficient to give Brodhurst reasonable notice of an easement across her property.

"The person who asserts an easement has the burden of proving the existence of the easement." *Riffle v. Worthen*, 327 Ark. 470, 939 S.W.2d 294, 298 (1997); *accord, Connolly v. Maine Cent. R.R. Co.*, 2011 ME 108, 30 A.3d 830, 834 (2011). Once the party asserting the easement has made a *prima facie* showing of its existence, the opponent bears the burden of negating its existence. *See Academy of Medicine of Queens County v. Seminole 75 Realty Corp.*, 38 A.D.3d 693, 832 N.Y.S.2d 286, 288 (N.Y. App. Div. 2007) (where plaintiff makes a prima facie showing of the existence of an easement, summary judgment is appropriate if the defendant fails to raise a material issue of fact as to its validity); *Bennett v. Shellenberger*, 208 Pa. Super. 494, 223 A.2d 870, 872 (1966). Local laws do not address the creation of servitudes upon property. Absent applicable local laws, the common law, as articulated in the American Law Institute's Restatements of the Law, would apply. 1 V.I.C. § 4. Accordingly, I will examine the Restatement of the Law of Property, Third to determine whether the documents filed with the trial court are sufficient to confirm that an easement exists upon Brodhurst's property. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 982 (V.I. 2011) (explaining that "a strong preference exists for following the most recent Restatement over an older version"), *aff'd*, 680 F.3d 296, 299, 56 V.I. 999 (3d Cir. 2012).

Regarding conveyances made by references to maps, the Restatement of the Law states that:

> In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of servitude, and if a different intent is not expressed or implied by the circumstances.

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 (2000). Brodhurst claims that OLG Drawing No. 4674 fails to adequately prove the existence of an easement upon her property because the multiple lines and drawings on the map are confusing and inconclusive. However, this claim is specious and unreasonably ignores the obvious. The express indications of the exis-

tence of an easement across Brodhurst's property are unequivocal for a number of reasons.

First, the explicit statements on the parties' deeds subjecting their plots to "covenants, easements, and restrictions of record" provide a compelling indication that Brodhurst's property could be subject to recorded easements. When Brodhurst purchased her plot, she was given a warranty deed that made explicit reference to OLG Drawing No. 4674. Both the warranty deed for Frazier's property, Plot No. 119, and the warranty deed for Brodhurst's property, Plot No. 121, referenced the same OLG Drawing No. 4674. The deed transferring title to Plot 119 explicitly states that it is "SUBJECT, HOWEVER, to covenants, easements, and restrictions of record and all applicable law and regulations." (J.A. at 73.) The deed transferring title to Plot 121 also provides that it is "SUBJECT, HOWEVER, to all easements, covenants, restrictions, and rights of way of public record[.]" (*Id.* at 76.) Accordingly, both warranty deeds inform prospective purchasers that any interest in the respective plots is subject to "all easements" of record on the property. Both warranty deeds explicitly refer to the boundary lines as *"more fully shown* on OLG Drawing No. 4674[.]" (*Id.* at 73, 76.) (emphasis added). As Brodhurst notes, this map included a series of lines, dots, letters, and words across Plot No. 121 and adjacent plots.

Second, the most convincing indication of the existence of an easement across Plot No. 121 is undoubtedly the unambiguous phrase "30' Joint Use Driveway" which is explicitly stated on the referenced OLG Drawing No. 4674 with an arrow pointing to a partitioned area on the easternmost portion of Brodhurst's property. This provides not just a strong presumption, but a clear, precise indication that an easement exists. If a map explicitly designates an area for a specific use, the implication that a servitude exists to implement the planned use is unequivocal. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 cmt. b (2000). "The clearer the designation of a specified use, the more explicit the expression of intent not to create [a] servitude[] must be." (*Id.*) The majority insists that the Superior Court erred in "interpreting" that the arrow leading from the words "30' Joint Use Driveway" to the partitioned area in question on OLG Drawing No. 4674 was error. Maj. Op. at 373. I find, as the lower court did, that the directions on the drawing are clear and are not ambiguous as the majority claims. The following is crucial. It is noteworthy that the blurry and jumbled 4 1/2 inch x 5 1/2 inch

reproduction of OLG drawing No. 4674 that the majority used in its opinion on page 372 in an attempt to claim ambiguity is not the size of the drawing used by the trial court in ruling on summary judgment. *See* Maj. Op at 372. The actual OLG drawing size, which was the drawing considered by the trial court, is an enormous and imposing drawing, an approximately 1 1/2 foot (18 inches) x 2 foot (24 inches) document that unequivocally depicts the words "30' Joint Use Driveway" with a concise and distinct arrow that makes a 90° upward turn unmistakably pointing to the easternmost portion of Brodhurst's property, as depicting the exact location of the easement. See J.A. at 96 (This page is an addendum in the Joint Appendix containing the 18 inches by 24 inches OLG Drawing No. 4674 considered by the trial court which is available for review in this appeal). On a drawing the size of 18 inches by 24 inches, there are no obfuscating markings. I underscore the following which is pivotal in this case: what a person can readily discern from a miniature drawing the size of 4 1/2 inches x 5 1/2 inches is extremely dwarfed by what the same person can discern from the same drawing the size of 1 1/2 foot (18 inches) x 2 foot (24 inches). Similarly, what Brodhurst and the trial court would have examined is not the blurry and congested 4 1/2 inch x 5 1/2 inch OLG Drawing No. 4674 as replicated on page 372 of the majority opinion, but they would have examined a 1 1/2 foot x 2 foot OLG Drawing No. 4674. Further, the trial court's "interpretation" of the map could not have been error, as the interpretation is consistent with the expressed intent of the grantors, with the requirements of the Department of Public Works, and with all other documents submitted in the trial record.

Finally, even if Brodhurst could identify in a material sense that the OLG drawing referenced in the Deeds is unclear, her challenge to the easement would nonetheless still fail, because as a self-described "experienced purchaser of property," she should have been aware of the circumstances surrounding the conveyance of Plot No. 121 as illustrated by OLG Drawing No. 4674. This OLG Drawing No. 4674 is a map overview that gives a distinct and unequivocal illustration of Plot 121, purchased by Brodhurst, and includes surrounding plots of land that were contiguous to or adjoined to it. From OLG Drawing No. 4674, a buyer of Plot No. 121 can easily determine that this parcel is contiguous to and directly between Plot No. 120, the main road, and Frazier's Plot No. 119, which was completely landlocked with no access to Plot No. 120 or the

main road. OLG Drawing No. 4674 contains specific markings which lead from the landlocked Plot No. 119 to Road Plot 120. These conspicuous markings should, at the very least, provide actual notice that there could be an easement across Brodhurst's property or that the property could in some other form be encumbered, even if Brodhurst personally found the lines to be indistinct, a claim that the trial court rejected.

The fact that Frazier's plot is completely landlocked and is completely blocked from the main road by Brodhurst's property creates a compelling and cogent conclusion that Brodhurst's property is encumbered by an easement. The most cursory examination of OLG Drawing No. 4674 would have disclosed this fact. The common law is unequivocal that it is against public policy to deny a landowner access to his property:

> Servitudes Created by Necessity
>
> A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor; of rights necessary to reasonable enjoyment of the land implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights.

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.15 (2000). Importantly, when the original grantors created the OLG drawing, they made certain to include an easement that affords ingress and egress to Frazier's plot. If the grantors had not created the easement, Frazier's property would be landlocked. At a minimum, OLG Drawing No. 4674 provides potential purchasers with notice that the eastern end of the property could be encumbered with an easement for Plot No. 119 to have access to the main road. Furthermore, the 30 foot strip of land across the easternmost portion of Brodhurst's property would provide the most direct way to access the main road, and would be the most convenient way for Frazier to have ingress and egress to his property.

Brodhurst provides no basis for offering Frazier an alternate easement path across her property other than where indicated by the OLG drawing. She does not disclose exactly where the alternative path she offered is located nor why that alternative area would be a proper location for an easement. Nonetheless, as owner of the servient parcel, Brodhurst cannot

repudiate the existence of an established easement located in one area of her property in favor of an easement across another area that she deems more appropriate. *See Smith v. deFreitas*, 329 F.2d 629, 633, 4 V.I. 525 (3d Cir. 1964). Significantly, the intended location of the easement provides the most convenient ingress and egress to Frazier's plot and provides the least intrusive access across Brodhurst's plot. Where a conveyance references a plan or map on which an abutting way is shown, an easement is implied in the conveyance and is deemed a part of the property to which the grantee is entitled. *Id.* (In an action to restrain defendant from accessing a passage and stairway through plaintiff's land, the United States Court of Appeals for the Third Circuit opined that a passageway through plaintiff's property was reasonably necessary as the principal means of access to defendant's property, even in light of a possible alternative means of access through defendant's adjacent property).

Accordingly, the OLG drawing itself and the deeds for the parties' plots which reference the same OLG Drawing No. 4674 are sufficient to provide a reasonable buyer with notice that Plot No. 121 is encumbered with an easement. The majority's assessment that Brodhurst had no notice of the encumbrance on her property is clearly against the weight of the evidence on the record and established legal precedent. The majority places much emphasis on the grantors' intent to create an easement and whether Brodhurst was directly informed by the developers of the easement's existence. The majority does not cite any authority that would make an easement, properly created by law, cease to exist if land developers did not directly inform a buyer of its existence. At the very least, Brodhurst would have been on inquiry notice. The law is explicitly clear that a deed that references a map or drawing which describes the property is incorporated into and becomes a part of the deed. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 (2000). *See also Hirsch v. Tolonen*, 48 Conn. App. 445, 711 A.2d 731, 732 (1998) and *Conway v. Miller*, 2010 MT 103, 356 Mont. 231, 232 P.3d 390, 395 (2010) (holding that "[w]hen land is sold with reference to a properly recorded plat, the plat becomes part of the document conveying the

interest in land").[3] The majority claims that the evidence does not demonstrate that the easement was ever recorded. Maj. Op. at 374. However, it is reasonable to infer that the developer believed that, in recording the OLG drawing, which depicts the thirty-foot easement, he was in fact complying with the public record requirement. Indeed, such a belief would not be contrary to the holdings of numerous state high courts. *See Edwards v. Hill*, 208 N.C. App. 178, 703 S.E.2d 452, 455 (2010) (A survey referenced in a deed becomes a part thereof and need not be recorded); *United Bank v. West Central Georgia Bank*, 275 Ga. App. 418, 620 S.E.2d 654, 655 (2005) ("a plat, which is not recorded with a deed, may be incorporated by reference"). *See also* 25 AM. JUR. 2D *Easements and Licenses* § 21 ("An easement created on conveyance with a reference to a map or plat is not negated by the fact that the map or plat is not properly made or recorded for purposes of dedication") (collecting cases).

Accordingly, I find that the Majority's conclusion that an easement could not have been found by the trial court at the summary judgment stage completely overlooks support from or reference to cognizable legal authority and is completely contrary to the jurisprudence of this territory and other jurisdictions.[4]

Furthermore, even if the majority disagrees that the express indications of an easement were sufficient, the circumstances surrounding the conveyance of Brodhurst's property and the fact that her property separated a landlocked property from the main road were sufficient, at

---

[3] A plat is defined as a map describing a piece of land and its features, such as boundaries, lots, roads, and easements. BLACK'S LAW DICTIONARY 1268 (9th ed. 2009). *See also* MERRIAM-WEBSTER'S DICTIONARY OF LAW, Collector's Ed., 365 (2005) ("a plan, map, or chart of a piece of land with present or proposed features (as lots)").

[4] The majority implies that the Restatement (Third) of Property is not the correct authority in this matter. See Maj. Op. at 369 n.3. Further, the majority implies that the trial court erred in applying the Restatement (Third) of Property to this case. The majority does not, however, allude to what would be the more applicable rule or regulation that determines the creation of an easement by reference to a map especially in light of the absence of local laws on the subject. Although *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011) holds that this court may adopt a different doctrine than that expressed in the Restatements, that opinion does not hold that that this Court adopts legal principles arbitrarily and in conflict with established case law precedent. Such a conclusion would cause confusion for the lower courts in attempting to discern what applicable rule to apply in the absence of local law. In the present appeal, the majority articulates no justifiable reason for not following the Restatement (Third) of Property.

minimum, to place her on actual notice of the probable existence of an easement. "The creation of a servitude burden may be implied by the circumstances surrounding the conveyance of another interest in land[.]" RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.11 (2000).

## B. The Trial Court did not Err in Considering Additional Documents Submitted in Support of Summary Judgment

Brodhurst's contention that the trial court erred in considering the additional documents submitted by Frazier in determining the existence of an easement is also spurious. (*See* Br. of Appellant at 5.) Contradictorily, Brodhurst asserts almost simultaneously that the trial court erred in *not* considering any other evidence except OLG Drawing No. 4674 and her affidavit in ruling on summary judgment. (Br. of Appellant 10) (emphasis added). I note that a purchaser of property is charged with the knowledge of encumbrances that are recorded. *See Louis W. Epstein Family P'ship v. Kmart Corp*, 13 F.3d 762, 768-69 (3d Cir. 1994). Nonetheless, I will address Brodhurst's belief that the trial court erred in considering the additional evidence submitted by Frazier.

Where there is ambiguity or uncertainty as to the scope of an easement, the surrounding circumstances, including the characteristics and conditions of the servient and dominant tenement, and the intent of the grantor play a pivotal role in determining the intended use. *See Alexander v. National Fire Ins. Co. of Hartford*, 454 F.3d 214, 223 (3d Cir. 2006). The RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.1 (2000), provides the following:

> (1) *A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.*
>
> (2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred.

(Emphasis added). Therefore, even if the scope of the easement were ambiguous as Brodhurst claims and as the majority agrees, evidence that was

before the trial court, and that provided clarity on the circumstances surrounding the creation of the servitude and the intent of the parties, was properly considered in accordance with the common law.

In support of his Motion for Summary Judgment, Frazier presented documentation that included affidavits from the land developer and the subdivision planner, and further evidence from numerous drawings and maps of the subdivision. Whit Heffington ("Heffington") was the planner and land surveyor that created the publicly registered OLG drawings for the grantors D.A. Lomax and Deborah Lomax, who had OLG Drawing No. 4674 included in the warranty deeds given to both Brodhurst and Frazier. (J.A. at 35.) Heffington created the OLG drawing with the expressed purpose of including an easement across the eastern edge of Brodhurst's property Plot No. 121, and stated in his affidavit[5] that

---

[5] Whit Heffington's affidavit states in pertinent part that:

I, R.W. "Whit" Heffington,, being duly sworn, depose and state:

5. In 1988, I was engaged in Vista Concordia, Inc. to survey and subdivide a portion of Estate Concordia, St. Croix now known as "Vista Concordia, Phase II." D.A. Lomax was the principal of Vista Concordia, Inc. and [I] took instruction from D.A. Lomax in the execution of my duties as land surveyor and engineer for Vista Concordia, Phase II.

6. I performed much of the land surveying and subdivision planning work associated with the Vista Concordia subdivision.

7. I have intimate knowledge of the intentions of Vista Concordia, Inc. concerning the subdivision of Vista Concordia because I am the person to whom D.A. Lomax verbalized his plans for Vista Concordia, Phase II and I am the sole person engaged by Vista Concordia, Inc. to effect its plans/ intentions for Vista Concordia.

8. I and my company first prepared and drew OLG Drawing No. 4674 ("Drawing No. 4674") on April 8, 1991. Drawing No. 4674 depicts certain parcels of land located in Vista Concordia. I and my company later revised Drawing No. 4674 on July 2, 1991 to reflect the separation of Plot Nos. 121 and 122 from Plot No. 119. I and my company later further revised Drawing No. 4674 on August 15, 1991 to reflect the separation of Plot No. 123 from Plot No. 119.

9. I have reviewed Drawing No. 4674 and three drafts prepared by my company and me in preparation of Drawing No. 4674 in anticipation of my execution of this Affidavit. I have clear memory and knowledge of the facts surrounding the subdivision of Plot No. 119 into "New Plot 119" and Plot Nos. 121, 122, 123. Drawing No. 4674, as attached to the Motion for Summary Judgment (the "Motion") as Exhibit C, and the three drafts attached to the Motion as Exhibit D have not been altered since each was prepared by my company and me in 1991.

"Drawing No. 4674 was prepared in order to depict the [j]oint [u]se [d]riveway as an easement in, over and through Brodhurst's property for the benefit of Frazier." (*Id.* at 35.) Regulations promulgated by the Department of Public Works required the grantors of the property to provide a thirty-foot wide easement that connected Frazier's property, Plot No. 119, to the main road. (J.A. at 35-36.) Both the Department of

10. Plot No. 119 had originally been designated as "Cluster Home Site" by Vista Concordia, Inc. This Cluster Housing required additional permitting which ultimately was apparently deemed too costly in either time, money or both for the prevailing real estate market. This decision led to the later subdivision of Plot 119 described herein and in the Motion.

11. Requirements of the Cadastral Section of the Public Works Department (later DPNR and later still, OLG) prevented new drawings from being filed in place of existing drawings. Therefore, hand-drawn revisions to the filed original drawing was required to complete this subdivision of Plot 119.

12. These revisions also had to incorporate a thirty-foot (30') wide easement over the far east end of Plot No. 121 so that "New Plot No. 119" would not be a landlocked parcel. This 30' wide easement is clearly marked on Drawing No. 4674 and is referred to thereon as the "30' Joint Use Driveway." I refer to this easement herein as the "Joint Use Driveway."

13. The Joint Use Driveway was intended by Vista Concordia, Inc. and me as an easement to be shared by "New Plot 119" and Plot 121, for the benefit of each of those parcels, to provide each parcel with ingress and egress between Road Plot No. 120 and each of those parcels.

14. The Joint Use Driveway consists of the land located inside the following four boundaries depicted on Drawing No. 4674: (1) the boundary line between Plot Nos. 121 and 119 on the north; (ii) the boundary line between Plot Nos. 121 and 123 on the east; (iii) the boundary line between Plot No. 121 and Road Plot No. 120 on the south; and (iv) the dotted line extending across Plot No. 121 on the west.

15. Consistent with the sequentially running lines above that mark right-of-way segments at curves and tangent lines "GG" through "TT," the solid line that runs triangular through the Joint Use Driveway is a "leader-line" denoting the location of right-of-way tangent line "UU." The leader-line denoting the location of right-of-way tangent line "UU" does not divide the Joint Use Driveway. The Joint Use Driveway exists solely on Plot. No. 121.

16. I have reviewed the warranty deed pursuant to which the Respondent in this matter took title to Plot No. 121 (*"Respondent's Deed"*). In light of the description of Plot No. 121 as set forth on Respondent's Deed, the incorporation by reference of Drawing No. 4674 therein and a cursory review of Drawing No. 4674, I am surprised that any person could rationally deny the existence of the Joint Use Driveway as an easement over Plot No. 121, partially intended for the benefit of Plot No. 119.

17. If called to testify in this matter, I would state the facts as set forth herein.

Public Works and the grantors made it explicit that the easement was created as a joint use driveway which affords Frazier access to his adjoining plot. The drawings and maps that Frazier provided, in addition to the OLG Drawing No. 4674, further confirm that the easternmost portion of Brodhurst's property, Plot No. 121, was intended to be used as an easement to provide ingress and egress to Frazier's property, Plot No. 119. Accordingly, even if OLG Drawing No. 4674 and the deeds had ambiguous language in them, and I do not agree that they do, evidence of the intent of the developers would have effectively demonstrated the existence of an easement. *See* D.A. Lomax's affidavit, *supra* note 2.

Among the numerous maps that Frazier submitted to the trial court in support of his Motion for Summary Judgment was a widely distributed advertising map that was used by prospective purchasers. (J.A. at 37.) The advertising map provided prospective buyers with a view of the subdivision including Plots Nos. 119 and 121. The advertising map depicts the pertinent area on Plot No. 121, which is sectioned off with the words "30' Joint Use Driveway" directly inside the demarcated section. (*Id.* at 69). This map would undoubtedly place prospective purchasers of Plot No. 121 on actual notice of an easement across the property.

Lastly, even if an easement by implication and easement by necessity would be attributable to this case, one need not go beyond the Warranty Deeds and the referenced OLG Drawing No. 4674 because the language in these documents is sufficiently clear to establish the existence of the easement. The majority categorically ignores and circumvents this array of evidence presented in the trial record that establishes an easement. I find that the warranty deed, OLG Drawing No. 4674, the affidavits of the developers stating their intent to create an easement, and the numerous filings of Frazier unequivocally validate the existence of an easement.

### C. Brodhurst has not met her Burden of Rebutting Frazier's Showing of an Entitlement to Summary Judgment, by Demonstrating a Genuine Issue of Material Fact.

Frazier has met his burden as the movant by submitting sufficient evidentiary material establishing that he is entitled to a finding of an easement as a matter of law. After Frazier established that he was entitled to a finding of an easement as a matter of law, the burden rested upon Brodhurst, and not the trial court, to identify material fact issues concerning the existence of an easement. I will now determine whether

Brodhurst met her burden in presenting any evidence to the trial court that casts sufficient doubt on the existence of an easement, and creating a genuine issue of material fact that might defeat a grant of summary judgment.

Summary Judgment motions must be granted unless the opposing party "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.' " *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). It is mandatory that "the nonmoving party must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996) (quoting *Celotex*, 477 U.S. at 322).

Many of the cases discussing the burden to identify evidence that rests upon the nonmoving party quote and follow the language of former Rule 56 — language that is no longer contained in the Rule after it was rewritten in 2010 to "improve the procedures for presenting and deciding summary-judgment motions." FED. R. CIV. P. 56 advisory committee's note (2010). However, the Rules drafters also stated that "[t]he standard for granting summary judgment remains unchanged" in the 2010 rewriting of the Rule. *Id.* While a nonmoving party need not produce any evidence in those cases where the nonmovant can point out that the party with the burden of proof on an issue is missing all proof on a required element,[6] I reiterate the obligation resting upon a nonmoving party who asserts that there are triable issues of fact on a particular element of a claim or defense to identify "significant probative evidence" that could be adduced at a trial in support of her assertions.[7] Therefore, when opposing a motion for summary judgment, a party cannot rely on mere averments or denials but must "designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (such factual material must itself be admissible in evidence, or must be capable of being proven by evidence that will be admissible at trial).

---

[6] See FED. R. CIV. P. 56(c)(1)(B) advisory committee's note (2010) (stating that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

[7] *Anderson*, 477 U.S. at 249.

Brodhurst does not have a great burden as the nonmoving party; she is simply required to show *specific* facts that present a genuine issue worthy of trial as opposed to mere general allegations and denials. The mere existence of some alleged factual dispute between the parties is not enough to defeat an otherwise properly supported motion for summary judgment. *Keyes v. Catholic Charities of the Archdiocese of Phila.*, 415 Fed. Appx. 405, 408 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 247-48). When a motion for summary judgment is supported by the evidence on record, a nonmovant cannot rely on mere allegations, but must present some evidentiary matter showing that there is a genuine, triable issue. Because the Warranty Deeds and OLG Drawing No. 4674 create implications of an easement too compelling to be ignored and to be repudiated, Brodhurst failed to meet this burden.

The majority notes that, in accordance with the Restatements, once a party presents evidence demonstrating an inference of an easement, the opposing party may rebut that inference by pointing to contrary evidence, with the strength of the evidence needed to rebut the inference of an easement dependent on the strength of the evidence. Maj. Op. at 369-370 (citing RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13 cmt. b (2000)). The majority completely ignored the fact that Brodhurst presented *absolutely no evidence* in rebuttal of an implied easement other than her assertion that she didn't notice the easement depicted on the 1 1/2 foot by 2 foot OLG Drawing No. 4674.

In opposition to summary judgment, Brodhurst proffered her affidavit, stating that she is an experienced purchaser of property, and in her experience OLG drawings demonstrate the existence of easements with sufficient clarity, unlike OLG Drawing No. 4674, which does not clearly depict an easement but rather contains unintelligible markings, none of which unequivocally establishes an encumbrance.[8] (J.A. at 84.) Brodhurst

---

[8] Brodhurst's affidavit asserts in relevant part that:

 2. I have purchased various properties on St. Croix from time to time over the past 20 years, so I am familiar with the documents generally involved in such transactions.

 3. The deed giving me title to Plot 121 Estate Concordia, a copy of which is attached as Exhibit A, makes no mention of any easements across my property.

 4. The OLG Drawing referenced in my deed, OLG Drawing No. 4674, dated April 8, 1991, revised August 15, 1991, a copy of which is also attached as

never unequivocally denies the existence of an easement on her property, but only repeatedly emphasizes that the OLG drawing, from her personal perspective, is not sufficiently clear to support the existence of an easement. The OLG Drawing No. 4674 clearly states that there is a "30' Joint Use Driveway" on the eastern portion of Brodhurst's property. Brodhurst attempts to create a factual issue by suggesting that these lines can mean anything. She provides nothing substantial to explicate what the words "30' Joint Use driveway," with an arrow pointing directly to her property, could otherwise possibly mean, nor does she offer substantive evidence to suggest that an easement does not exist on her property. It is a basic principle that in deciding a motion for summary judgment, the trial court must consider the evidence and the applicable law, and not just a litigant's personal beliefs.

In an effort to manufacture a genuine issue of material fact based upon the thoroughness of her adversary's court filings, Brodhurst contended that had the OLG Drawing No. 4674 clearly established a driveway easement, Frazier would not have had to submit additional plot maps and affidavits from the developers, nor would he have had to highlight the alleged area of the easement for the trial court. (Reply Br. of Appellant 2.) However, Frazier's position is consistent with established case law precedent which instructs the moving party to present evidentiary matters which establishes the absence of a genuine issue of material fact. A party moving for summary judgment must not simply rely on allegations in his pleadings, but must set forth specific facts which demonstrate the absence of triable genuine issues. *See United States v. 8 Bayview Terrace*, 392 Fed. Appx. 85, 92 (3d Cir. 2010). *See also Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

---

Exhibit B, does not show an easement across my property either, as the map has multiple lines drawn across the eastern portion of my property, none of which are clear and none of which cause me to believe that there was an easement across this property. Had I known there was an alleged easement across this part of Parcel 121, I would not have brought it.

5. Indeed, when I have purchased property with an easement, it has always been clearly shown on the OLG map, which is not the case here.

6. I have offered the plaintiff at Plot 119 an easement across another part of my property which would allow access to this lot, which the plaintiff refused.

7. I have reviewed the 6 drawings in Exhibits C, D, F and G, which are attached to the plaintiff's motion. Prior to my purchase of Plot 121, I had never seen any of these maps or drawings.

Once Frazier submitted evidence, which included additional plot maps and affidavits buttressing his contentions and verifying the existence of an easement, the burden shifted to Brodhurst to provide evidence creating a triable issue on the opposite contention. The record reflects that Brodhurst had ample opportunity to conduct discovery and to provide the trial court with evidence to support her allegations regarding the existence of a triable issue. (J.A. at 90.) However, despite this opportunity Brodhurst failed to proffer even a scintilla of evidence that a reasonable jury could consider and thereafter rule in her favor. If a nonmovant has not shown that an essential component of the nonmovant's claim can be proven at trial for want of evidence, it is appropriate to grant the movant's motion for summary judgment. *See Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1061 (3d Cir. 1991) (holding that "to overturn a summary judgment, the losing party in the [trial court] needs to show that one or more of the facts on which the district court relied was genuinely in dispute and material to the judgment"). Lastly, it is noteworthy that Brodhurst never filed any sworn statements, including affidavits, depositions, or answers to interrogatories which expressly contradict the affidavits of D.A. Lomax and Whit Heffington. Considering Brodhurst's failure to procure any substantial evidence which confirms a genuine issue of material fact, the trial court's grant of summary judgment was proper.

### D. The Trial Court Considered Sufficient Evidence to Support Its Granting of Summary Judgment without a Hearing

Brodhurst asserts, in contradiction to her previous contention, that the trial court considered only OLG Drawing No. 4674 and her affidavit, when it should have held a full evidentiary hearing prior to granting summary judgment. (Br. of Appellant 10.) Firstly, my analysis above reveals that the trial court considered a variety of sources from which it ascertained the facts upon which it based its decision. Importantly, the trial court considered OLG Drawing No. 4674, Brodhurst's affidavit, D.A. Lomax's affidavit, Whit Heffington's affidavit, the deed granting Plot 119 to Frazier, the deed granting Plot 121 to Brodhurst, and the various filings by the parties. Moreover, Brodhurst was afforded ample opportunity to conduct discovery. The parties entered into a stipulation for an extended time for the completion of pretrial discovery from February 14, 2008 to September 1, 2008. (*see* J.A. at 9-10.) Despite this extension of time for

discovery, Brodhurst failed to enumerate what evidence would have been revealed at an evidentiary hearing that would have created a genuine issue of material fact to warrant denying Frazier's Motion for Summary Judgment. Nor did she submit an affidavit as permitted under FED. R. CIV. P. 56(d) to alert the trial court to a claim that "for specified reasons" she was unable at that time to "present facts essential to justify [her] opposition."

Secondly, in claiming that it was necessary for the trial court to hold evidentiary hearings before ruling, Brodhurst greatly misconstrues the role of the trial court in ruling on a motion for summary judgment. The moving party has the burden of showing that there are no genuine issues of material fact. Once the moving party has established the basis for summary judgment, the burden shifts to the non-movant, not the trial court, to proffer or identify evidence that raises a genuine issue of material fact. A grant of summary judgment, not an evidentiary hearing, is the appropriate recourse against a party that fails to make an evidentiary showing to establish the existence of a genuine dispute about an element essential to that party's case and on which the party will bear the burden at trial. *See Serbin*, 96 F.3d at 69 (citing *Celotex*, 477 U.S. at 322).

Brodhurst is incorrect in claiming that the trial court had a responsibility to hold an evidentiary hearing to elicit evidence to establish that summary judgment is not warranted in this case. Current FED. R. CIV. P. 56 makes no reference to holding a hearing in summary judgment proceedings. Indeed, the obligation of the trial court considering summary judgment is to determine *whether* there is an issue that needs an evidentiary proceeding or trial. FED. R. CIV. P. 78(b) authorizes the court to make a determination on motions and briefs without oral hearings. Case law precedent further establishes that a hearing is not a requirement, nor is it a due process right when the trial court considers a motion for summary judgment. *See Forjan v. Leprino Foods, Inc.*, 209 Fed. Appx. 8, 10 (2d Cir. 2006) (citing *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998)) and *Carter v. Cybertech Intern.*, 21 Fed. Appx. 818, 821 (10th Cir. 2001) (citing *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir. 1988)). The decision to grant oral argument lies within the discretion of the trial court. *Forjan*, 209 Fed. Appx. at 11 (citing *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999)).

While decided before *Celotex* and under the predecessor versions of both Rule 56 and 78, *Season-All Industries, Inc. v. Turkiye Sise Ve Cam*

*Fabrikalari, A.S.*, 425 F.2d 34, 39-40 (3d Cir. 1970) gives important background regarding the process for adjudicating summary judgment motions. While the Third Circuit there recognized the prudence of holding oral arguments on summary judgment motions, it noted that a trial court may rule on summary judgment without a hearing if the court determines that the parties had an adequate opportunity to provide sufficient information in the pleadings, and the papers offered in support of and in opposition to the motion, so that a hearing would be unnecessary.[9]

The Third Circuit later clarified that "[w]here a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004) (citation and internal quotation marks omitted). Obviously, in a case like this one where summary judgment was sought by motion, a hearing is not required before ruling on summary judgment so long as there has been an opportunity to submit written evidence and argument. *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 176 (3d Cir. 1990). Further, these hearings are held as a means for the parties to present their cases to the court. Even where the record contains facts that possibly provide support for a non-movant's position, the burden would still be on Brodhurst as the non-movant, *not the court*, to cull the record and affirmatively identify genuine issues of material fact sufficient to defeat a motion for summary judgment. *See Morris v. Orman*, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-26 (E.D. Pa. Mar. 1, 1989) (citing *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)). Thus, the modern version of Rule 56(c)(1) provides:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[9] *See also* 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: Civil § 2720.1 (3d ed. 1998).

(B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Accordingly, the trial court did not abuse its discretion in ruling on summary judgment without a hearing. I find that the trial court based its decision on proper consideration of the record before it.

### E. The Record does not support Appellant's Claim that the Trial Court made a Credibility Determination

Brodhurst's final contention is that the trial court improperly made a credibility determination in considering and rejecting her affidavit in opposition to the Motion for Summary Judgment. (Br. of Appellant 10.) Generally, the trial court may not weigh the credibility of witnesses or the evidence in considering a motion for summary judgment. The evaluation of credibility and the weighing of evidence are functions reserved for a jury. *See Anderson*, 477 U.S. at 255. If a credibility determination is necessary as to the existence of a material fact, a grant of summary judgment would be improper.

Brodhurst asserts that the "trial court's rejection of [her] affidavit required a credibility determination." (Br. of Appellant 10.) In her affidavit, Brodhurst affirmed that she possessed over twenty years of experience as a purchaser of property, and in her experience with properties encumbered by easements, the OLG drawings referencing such properties usually clearly demonstrates the existence of an easement. (J.A. at 84.) In considering Brodhurst's affidavit and the statements therein, the trial court stated in its Order Granting Summary Judgment that:

> The Court is incredulous of these statements because reason dictates that any reasonable person would notice and be put on actual notice of the clearly labeled words: " '30' Joint Use Driveway' ". It stands to reason further that it would be incumbent upon someone with experience in purchasing properties for over 20 years to notice and take account of the Joint Use Driveway. [Brodhurst] has further stated that she has prior experience with OLG maps. Accordingly, there is no question then that [Brodhurst] understands that easements can be shown on such maps.

(*Id.* at 12.) While it is true that the trial court may not weigh the evidence in favor of one party over the other when considering a motion for summary judgment, the trial court must determine if the record demonstrates the existence of a reasonable doubt which might be construed in favor of the non-moving party. *See Beard*, 548 U.S. at 530. The consideration of affidavits in a motion for summary judgment does not necessitate a credibility evaluation.

In considering Brodhurst's affidavit, which is the only evidence she offers in opposition to summary judgment, the trial court engaged in an analysis as to whether the affidavit provided a reasonable inference as to an equivocality that can be construed in favor of Brodhurst. The trial court concluded that a reasonable jury could not possibly determine that a person with over twenty years' experience in purchasing real estate could fail to take note that the words "30' Joint Use Driveway" may have implications of an encumbrance upon her property. This is not a credibility determination, but an evaluation of a fact presented to the trial court through documents, which is a valid consideration in ruling on a motion for summary judgment. "[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Brodhurst proffered the affidavit as a means to oppose summary judgment. The trial court found that the affidavit failed to raise any genuine issue of material fact. An affidavit offered in support or opposition of a motion for summary judgment that is fundamentally "conclusory and lacking in specific facts" cannot defeat a motion for summary judgment. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) (citing *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 789-90 (3d Cir. 1978)).

Because Brodhurst's affidavit failed to identify specific facts raising any material issue concerning the existence of the easement litigated in this case, and provides no reasonable inferences that might be construed in her favor, I find that the trial court did not engage in a credibility finding and that its analysis was proper.

## V. CONCLUSION

For the reasons enumerated above, the trial court's grant of Summary Judgment in favor of Frazier should be affirmed.