IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
November 30, 2023 01:41 PM
SX-2022-MC-00027
TAMARA CHARLES
CLERK OF THE COURT



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **IN RE ALUMINA REFINERY TOXIC DUST CLAIMS** | **MASTER CASE NO: SX-22-MC-027 (Re: Nos. 21-450, 21-549, 21-641; 22-083)** |

**Cite as: 2023 VI Super 71P (Published)**

**Appearances:**
**J. Russell Pate, Esq.**
The Pate Law Firm
PO Box 890
St. Thomas, VI 00804
*For Plaintiffs*

**Warren T. Burns, Esq., Korey A. Nelson, Esq., Daniel H. Charest, Esq., Rick Yelton, Esq., and Chase Charbonnet, Esq.**
Burns Charest, LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
*For Plaintiffs*

**Thomas Alkon, Esq.**
Thomas Alkon, P.C.
*P.O. Box 223032*
Christiansted, VI 00822
*For Plaintiffs*

**Kevin A. Rames, Esq.**
K.A. Rames, P.C.
211 Company Street, Ste. 3 Christiansted,
St. Croix VI 00820
*For Defendant Lockheed Martin Corporation*

**Gregory K. Wu, Esq., KaSandra N. Rogiers, Esq., Hannah Sanchez, Esq. and Sangeeta Shastry, Esq.**
Shook, Hardy, & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108
*For Defendant Lockheed Martin Corporation*

**Julia B. Mosse, Esq.**
Katten Muchin Rosenman, LLP
50 Rockefeller Plaza
New York, NY 10020-1605
*For Defendant Glencore Limited*

**Jacques Semmelman, Esq.**
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue, 35th Floor
New York, NY 10178-0061
*For Defendant Glencore Limited*

**Douglas Capdeville, Esq.**
Capdeville Law
2107 Company St.
St. Croix, V.I. 00822
*For Defendant Glencore Limited*

## MEMORANDUM OPINION
**(Filed November 30, 2023)**

**Andrews, Jr.,** *Judge*

## INTRODUCTION

¶1     Plaintiffs Francis Milligan, spouse of a former worker at Martin Marietta Alumina Refinery (the Refinery) in St. Croix, along with Carl Pereira, Darren Giddings and Larry Francis, former workers at the Refinery, bring this action for damages against successor owners of the Refinery, Lockheed Martin Corporation (LMC), Glencore, Ltd. and Cosmogony II, Inc.  They allege during their employment at the Refinery, defendants negligently exposed refinery workers to toxic substances which caused them to suffer from asbestos and bauxite-related lung diseases.  Milligan alleges her husband brought toxic substances home on

his clothes thus causing her exposure. LMC moves this Court to grant a summary judgment against Plaintiffs because they filed their complaints more than two years after notification by their doctor that they had asbestosis. Plaintiffs respond that their complaints were timely filed within two years after discussing their test results, and work histories with counsel and discovered the cause of their diseases. They maintain their complaints were filed within two years of those discussions and are thus timely. For the reasons mentioned below, this Court concludes Plaintiffs' asbestos-related claims were untimely filed and their bauxite-related claims were timely. Accordingly, the Court will grant LMC's Motion for Summary Judgment in part and deny it in part.

## FACTUAL BACKGROUND

### General Facts

From 1972 to 1985, predecessors of defendant Lockheed Martin Corp. (LMC), collectively known as Martin Marietta, owned and/or operated an alumina refinery (the Refinery) located on the south shore of St. Croix.[1] Pls.' Resp. to LMC's S.U.F in Supp. of Its Dispositive Mots. ¶ 1, 1-2; ¶ 6, 3. The Refinery closed in 1985. Id. ¶ 2, 2. In 1989, Virgin Islands Alumina Company, a different

---

[1] Plaintiffs dispute this fact and assert that each of LMC's predecessors had a different role within the Refinery. Pls.' Resp. to LMC's S.U.F. ¶ 2. However, they submitted no document in support of their bare denial and do not specifically dispute Defendants' assertion. Thus, the Court treats the asserted fact as undisputed. V.I.R. Civ. P. 56(e)(2).

predecessor of LMC, purchased the Refinery and operated it from 1990 to 1995 when it was closed. Id. ¶¶ 3 – 5, 1 - 2.   The Refinery refined raw bauxite ore into alumina using what is known as the Bayer Process. Id. ¶ 7, 3.

Ricardo Milligan, the husband of plaintiff Fredona Milligan, worked at the Refinery as a scaler, turnaround worker, maintenance worker, scaffolder, laborer, and oiler, from 1984 to 1985. Pls.' Resp. to LMC's S.U.F. ¶ 62, 21.   Plaintiff Carl Pereira worked at the Refinery as a maintenance worker and process operator from the 1970s through 2000. Id. ¶ 68, 22.   Plaintiff Darren Giddings worked at the Refinery as a maintenance worker, from 1981 to 1985. Id. ¶ 56, 19.   Plaintiff Larry Francis worked at the Refinery as an engineer at the Refinery from 1980 to 1983. Id. ¶ 50, 18.   In 2019, Plaintiffs received chest x-rays.   Dr. Christopher John read them and issued a report for each plaintiff indicating they had pneumoconiosis, specifically asbestosis. Exs. 78, 82, 85, 88, LMC's Exs. Submitted in Supp. of Dispositive Mots. (Reports by C. John).   Pneumoconiosis is a general term that describes a group of interstitial lung diseases, including asbestosis and mixed dust pneumonoconiosis (MDP). Pls.' Resp. to LMC's S.U.F. ¶ 73, 24.   Except for expedited reports, Dr. John typically mailed out his reports within two to three weeks of preparing them.[2] Id. ¶ 168, 89; ¶ 187, 104; Pls.' Ex.

---

[2] LMC asserts in its S.U.F. that Dr. John typically sends or mails his reports within two to three weeks of preparation.   This assertion is supported by Dr. John's Deposition cited above. Plaintiffs have submitted no contrary evidence.   Hence the Court accepts the assertion as an undisputed fact. V.I.R. Civ. P. 56(e)(2).

130, John Dep. 81:11-25; 82:1-17.

After the issuance of Dr. John's report, Plaintiffs met with Michael Chestnut, at the Sunny Isle Medical Center, who performed a pulmonary function test on them and expressed no opinion regarding their diagnoses. Pls.' Resp. to LMC's S.U.F. ¶¶ 165-66 (Francis), 175-76 (Giddings), 185-86 (Milligan),195-96 (Pereira); Pls.' Ex. 142, Pate Decl. ¶¶ 3-6. During the visit at the Medical Center, Plaintiffs consulted with their counsel regarding their relevant work histories and exposures. Id. They subsequently filed their complaints in 2021 (except for Francis who filed in 2022).

## Complaint Allegations

Plaintiffs Milligan, Pereira and Francis filed thirteen-count complaints against defendants Lockheed Martin Corp. (LMC), Glencore Ltd. and Cosmogony, II, Inc.[3] Compls. Nos. 21-450 (Milligan), 21-549 (Pereira), 2022-83, p 1. Plaintiff Giddings (No. 2021-641) filed an eight-count complaint against LMC and Cosmogony II, Inc. Compl. No. 2021-649. Pereira, Giddings, and Francis claim to suffer from pneumonoconiosis as result of their exposure to bauxite ore dusts (and its constituents), alumina dusts, caustic soda and asbestos-containing

---

[3] These Plaintiffs settled their claims against Glencore Ltd. See Notice of Settlement CMS No. 21 (21-CV-450, 06/28/23); CMS No. 23 (21-CV-549, 07/11/23); CMS No. 17 (22-CV-083, 06/27/23). When the instant summary judgment motion was filed, all proceedings were stayed against Cosmogony II, Inc. See Order Staying Proceeding, CMS No. 10 (06/16/22). Accordingly, this opinion does not relate to Glencore, Ltd. nor Cosmogony II, Inc.

materials during their employment. Compls. Nos. 2021-549, ¶¶ 9 – 11, 2; 2021-641, ¶¶ 8 – 10, 2; 2022-083, ¶¶ 9, 12, 2.   Milligan claims to suffer from pneumonoconiosis as a result of the same dusts she inhaled which her husband, a refinery worker, brought home. Compl. No. 2021-450, ¶¶ 10-12, 2.   Francis further claims to suffer from possibility asbestos-related prostate cancer. Compl. No. 2022-083, p 2 ¶ 12.   Plaintiffs allege that alumina refiners have long understood that exposure to bauxite ore dusts, alumina and other products can cause MDP   and other related illnesses. Compl. 2021-450, ¶ 34, 6; 2021-549 at ¶ 30, 5; 2021-641, at ¶ 32, 5; 2022-083 at ¶ 35, 6.    All Plaintiffs also claim their inhalation of asbestos and bauxite dust caused them to have MDP.[4]  Pls.' Resp. to LMC's S.U.F. ¶ 47; Exs. 77, 81, 84, 87, LMC's Exs. Submitted in Supp. of Dispositive Mots. (Reports by C. John dated 05/30/23).   MDP is part of a group of lung diseases within a category called "pneumoconioses." Id. ¶ 205, 73.   Plaintiffs claim LMC was negligent with respect to industrial hygiene and health and safety practices at the Refinery. Id. 48, pp 17 - 18.

Plaintiffs' claims against LMC appear only in Counts 1 through 7. Compls. (No. 2021-450 pp 6-25, No. 2021-549 pp 5-21, 2021-641 pp 6-24, 2022-083 pp 6-24).   Those claims are for Negligent Undertaking (Ct 1), Premises Liability (Ct 2),

---

[4] Although no specific type of pneumoconiosis is alleged in their complaints, Plaintiffs, post filing, maintain they suffer from MDP as cited.   LMC concedes the existence of this claim.

Chattel Known to be Dangerous for Intended Use (Ct 3), Chattel Unlikely to be Made Safe for Use (Ct 4), Chattel for Use by Person Known to be Incompetent (Ct 5), Chattel Used to Supplier's Business Purpose (Ct 6) and Premises Liability (Ct 7). Id. In each of those counts, Plaintiffs claim injuries resulting from their exposure to bauxite dust and its constituents. Id. In Counts 1, 2 and 7 they additionally claim injuries resulting from their alleged exposure to alumina dusts, caustic fumes, and asbestos.

## PROCEDURAL HISTORY

LMC filed separate Motions for Summary Judgment Based on the Statute of Limitations against each plaintiff on August 7, 2023. Mots. for Summ. J. (Nos. 2021-451, 2021-549, 2021-641, 2022-083). Plaintiffs filed an omnibus opposition on August 22, 2023. Pls.' Opp. to Mots. for Summ. J. LMC filed separate replies on September 1, 2023. LMC's Mot. for Summ. J. Based on the Statute of Limitations. On September 15, 2023, this Court held a hearing and took the arguments under advisement.

## APPLICABLE LAW

¶2 Under Virgin Islands law, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.I.R. Civ. P. 56(a); Machado v. Yacht Haven U.S.V.I., LLC, 61 V.I. 373, 380 (V.I. 2014) (stating summary judgment is not to be granted unless "the pleadings, discovery, and disclosures of materials on file,

and any affidavits show that there is no genuine issue of material fact.). The movant bears the burden of demonstrating the absence of any genuine issue of material fact based upon the record. Aubain v. Kazi Foods of V.I., LLC, 70 V.I. 943, 948 (V.I. 2019) (quoting Brodhurst v. Frazier, 57 V.I. 365, 373-74 (V.I. 2012)). The moving party may meet his burden by "pointing out that there is an absence of evidence to support the nonmoving party's case." Id. If this is done, the burden shifts to the non-moving party to demonstrate with affirmative evidence from which a jury might reasonably rule in his favor. Id. Pursuant to the Virgin Islands Supreme Court, "'affirmative evidence' means 'actual evidence' and 'not mere allegations'." Basic Ss. v. Govt. of the V.I., 71 V.I. 652, 659 (V.I. 2019). In considering a summary judgment motion, "this Court must view all evidence in the light most favorable to the non-moving party." Id. Here, Plaintiffs are the non-moving parties.

## LEGAL ANALYSIS

¶3 Defendant LMC seeks dismissal of Plaintiffs' claims on grounds they were filed outside the applicable two-year statute of limitations. It argues any tolling under the discovery rule ended when Plaintiffs received medical reports from Dr. John indicating they had evidence of lung diseases diagnostic of

pneumonoconiosis and asbestosis, along with a history of exposure to asbestos.[5]

LMC's Mots. for Summ. J. 7-8 (No. 2021-450), p 8 (No. 2021-549), p 7 (No. 2021-641), pp 8-9 (No. 2022-083). No later than four weeks after issuance of the medical reports, LMC maintains, Plaintiffs' counsel would have received the reports. Id. pp 8-9 (No. 2021-450), pp 9-10 (No. 2021-549), pp 8-10 (No. 2021-641), pp 9-10 (No. 2022-83). Their complaints, LMC continues, were filed beyond two years of receipt by counsel of the medical reports and thus are untimely. Id. By LMC's calculations, Plaintiffs' complaints are at least 2 and up to 51 weeks untimely as follows:

| Plaintiff | Date of John's Report | Date Report Received[6] | Date Complaint Filed | Approximate Days Late |
|---|---|---|---|---|
| Milligan | 02/21/19 | 03/21/19 | 06/04/21 | 75 (10+ wks) |
| Pereira | 03/22/19 | 04/22/19 | 07/15/21 | 84 (12 wks) |

---

[5] LMC also argues the dates on which Plaintiffs received their medical reports marked the ending of any tolling under the inquiry notice rule. Mot. for Summ. J. 10. The Court does not address this additional argument since, pursuant to Virgin Islands jurisprudence, the applicable rule that tolls the Virgin Islands Statute of Limitations is the discovery rule. See Joseph v. Hess Oil, 867 F.2d 179,182 (3d Cir. 1989) (holding in an asbestos case, "application of the discovery rule, as previously outlined by this court, applies to the Virgin Islands statute of limitations.").

[6] LMC asserts that Plaintiffs or their counsels would have received Dr. John's reports at least within four weeks of preparation giving two to three weeks to mail and one week for delivery by the Post Office. See Pls.' Resp. to D's S.U.F. ¶ 168, 89; ¶187, 104; Pls' Ex. 130, John Dep. at 81:11-25; 82:1-17. Plaintiffs dispute this statement by arguing it is unsupported. They submit no evidence to the contrary. Under the circumstances, this Court finds LMC's assertion regarding the time of mailing Dr. John's report to be undisputed. V.I.R. Civ. P. 56 (e)(2). The Court further takes judicial notice that a week is a reasonable estimate of delivery time for a letter mailed between the Virgin Islands and the United States or within either. As such the Court finds that Plaintiffs, or their counsels, are deemed to have received Dr. John's reports within four weeks of their preparation.

| Giddings | 06/28/19 | 07/28/19 | 08/13/21 | 16 (2+ wks) |
| Francis | 02/26/19 | 03/26/19 | 02/26/22 | 358 (51 wks) |

Plaintiffs respond they "did not know the cause of their injuries, and their counsel didn't either," when Dr. John completed their reports.[7] Opp. to Mot. for Summ. J. 12. They argue that it was only later after they took their pulmonary function tests (PFTs) and met with counsel to discuss their work histories and exposures that they were able to connect their lung injuries to exposures from the Alumina Plant. Id. During those meetings, they claim, "[p]laintiffs' knowledge of their work and exposure histories was connected with their knowledge of counsel, and together this created an understanding of the cause." Id. Tolling, they argue, continued until the day those meetings occurred, i.e., June 9, 2019 (Milligan), July 21, 2019 (Pereira), August 18, 2019 (Giddings) and February 28, 2020 (Francis). Id. According to Plaintiffs, since their complaints were filed within two years of their meetings with counsel, they were timely filed. Id. For the reasons that follow, this Court concludes that the tolling of the applicable statute of limitations pursuant to the discovery rule ceased when Plaintiffs received their reports from Dr. John.

---

[7] Plaintiffs claim they are not seeking a "definitive diagnosis" standard to determine when they knew they had an injury and the cause thereof. Opp. to Mot. for Summ. J. 11. Nevertheless, in opposition to LMC's Motion for Summary Judgment, they contradictorily argue that "there is – at the very least – a material issue of fact as to whether the Dr. John's impressions in these cases constitute diagnoses." Id. at 13. This Court has previously addressed the definitive diagnosis issue and concluded that a medical diagnosis is not required to trigger the statute of limitations. See Opinion in Burt v. Lockheed Martin Corp., et. al., No. SX-2021-CV-548, p 14. Accordingly, contrary to Plaintiffs' assertion, whether Dr. John's impressions constitute diagnoses is not a material issue of fact pertaining to the instant motion for summary judgment.

As such, their complaints were untimely filed, as to their asbestos-related claims.

### 1) The Discovery Rule Applies to Toll the Applicable Statute of Limitations on Plaintiffs' Tort Claims.

¶4     Plaintiffs allege various personal injury tort claims against LMC in Counts 1 through 7 of their complaints. Compls. (No. 2021-450 pp 6-25, No. 2021-549 pp 5-21, 2021-641 pp 6-24, 2022-083 pp 6-24).   Pursuant to Virgin Islands law, the time period within which to commence an action for non-contractual injuries to person is two years after the cause of action has accrued. 5 V.I.C. § 31(5)(A). Generally, a cause of action accrues upon occurrence of the essential facts that give rise to that cause of action. In re Tutu Wells, 846 F. Supp. 1243, 1255, (D.V.I. 1993).   Here, Plaintiffs' causes of action would have accrued no later than 1983, 1985 or 2000 when their employment at the Refinery terminated.   However, where, as here, the injury or its cause was not immediately known despite the exercise of due diligence, the discovery rule applies to toll the applicable statute of limitations. Santiago v. V.I. Housing Auth., 57 V.I. 256, 273 (V.I. 2012) (citing Joseph, 867 F.2d at 182) (stating, in an asbestos case, "the discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim.").   Tolling continues until "the plaintiff knows, or reasonably should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct." Joseph, 867 F.2d at 182 n. 8.

¶5    The focus under the discovery rule is not on the plaintiff's actual knowledge but on "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." Santiago, 57 V.I. at 273 (quoting Bohus v. Belof, 950 F.2d 919, 925 (3d Cir. 1991)).   Precision and certainty of the injury and cause is not required.   Instead, "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put [her] on notice that a wrong has been committed and that [she] need[s] [to] investigate to determine whether [she] is entitled to redress." Marsh-Monsanto v. Clarenbach, 66 V.I. 366, 375 (V.I. 2017) (quoting Santiago, 57 V.I. at 274 (V.I. 2012)).

¶6    Here, Plaintiffs claim to suffer from creeping diseases (i.e. asbestosis and MDP) that were not immediately evident during their employment at the Refinery. Under the circumstances, this Court concludes that the discovery rule is applicable to the two-year statute of limitations on Plaintiffs' claims.   The parties do not dispute this conclusion.   What they dispute is the date on which tolling ended under the rule.   Hence, the narrow issue is whether there is a genuine issue of material fact as to the date(s) Plaintiffs knew or should have known they had an injury and that it was caused by the conduct of another.   If such a dispute exists, the Motion for Summary Judgment must be denied.   If not, this Court can determine the timeliness of Plaintiffs' complaints as a matter of law.[8]

---

[8]    Since the critical focus in applying the discovery rule is on when a party knew or should have

### 2) The Discovery Rule Tolled the Statute of Limitations On Plaintiffs' Asbestos-Related Claims Until They Received Dr. John's Initial Report Regarding Asbestosis.

¶7    As explained above, the discovery rule operates to toll the statute of limitations until Plaintiffs knew, or should have known they had an injury, and knew, or should have known, it was caused by another person's conduct. Here, Dr. John's report for each plaintiff stated,

> Parenchymal changes diagnostic of pneumonoconiosis are noted . . . Given the patient's abnormal chest x-ray and the appropriate latency period, I believe beyond a reasonable degree of medical certainty that he [or she] has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure.

Exs. 78, 82, 85, 88, Defs.' Exs. Submitted in Supp. of S.U.F. and Disp. Mots. (Reports by C. John). A simple reading of his report quickly reveals his conclusion, <u>beyond a reasonable degree of medical certainty</u>, that each plaintiff had evidence of: 1) a lung disease in the form of asbestosis; and 2) a history asbestos exposure.[9] Upon receipt of Dr. John's report, a reasonable person would readily conclude they

---

known of their injury, it is typically a question of fact. <u>United Corp. v. Hamed</u>, 64 V.I. 297, 306 (V.I. 2016). However, where there is no genuine issue of material fact, this Court may proceed to determine whether Plaintiff's action is time barred as a matter of law. <u>See</u> <u>Marsh-Monsanto</u>, 66 V.I. at 375 (stating "when the underlying facts are undisputed, application of the statute of limitations presents a question of law that may be resolved by summary judgment.").

[9] Plaintiffs argue that Dr. John's reports are mere "statements that if the ARTDC Plaintiffs were exposed to asbestos, then the opacities that Dr. John identified on the x-rays would be indicative of asbestosis." Pls. Opp. to Mots. for Summ. J. 14. Plaintiffs misread Dr. John's report. Dr. John did not condition his conclusion on possible asbestos exposure. He clearly stated Plaintiffs had, not might have, evidence of a lung disease, diagnostic of asbestosis. His report bears far more significance than Plaintiffs admit.

had asbestosis and it was caused by their exposure to asbestos.[10]

Although the report does not indicate the source of the asbestos exposure, Plaintiffs knew, or should have known, that the source was their (or in Milligan's case, her husband's) employment at the Refinery; and thus, their injuries were caused by the conduct of owners and/or operators of the Refinery. Milligan's husband worked at the Refinery for about one year (1984 to 1985). Pls.' Resp. to LMC's S.U.F. ¶ 62, 21. She reached out to Attorney Pate because her husband told her they need to check to "see if we are affected and have any asbestos in our

---

[10] Plaintiffs are deemed to have knowledge of Dr. John's report as of the date they were received by Plaintiffs' counsel (i.e., Attorney Pate or members of his law firm). Certainly Dr. John considered counsel to be Plaintiffs' agent as he forwarded his reports, containing confidential medical information, to counsel. Further, the existence of an attorney-client relationship between Plaintiffs and counsel, by the time of Plaintiff's x-ray, was acknowledge during the depositions of three of the plaintiffs. LMC's Ex. 39 in Support of S.U.F., Pereira Dep. 77: 11-21; LMC's Ex. 37 in Support of S.U.F., Milligan Dep. 118: 14-23; 119:1-4; LMC's Ex. 33 in Support of S.U.F. Francis Dep. at 113:2-9. The Virgin Islands Supreme Court recognized that the attorney-client relationship is in fact an agent-principal relationship. Id. at 131 (citing McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 853 (3d Cir. 1996)). It held that "information an attorney receives during the scope of his representation of a client will be imputed onto that client even if the client does not have actual knowledge of that information." Id. at 131. Applying this rule in the context of the statute of limitations, the Supreme Court stated:

> Therefore, as a general rule, the statute of limitations on a client's action will begin to run when the client's attorney knew or should have known about the circumstances giving rise to that claim, even if the client lacks knowledge of the potential claim.

Id. For these reasons, Plaintiffs are deemed to possess the knowledge communicated to their counsel via Dr. John's reports on the date received by counsel. See McKinney Fahie v.Ferguson, No. ST-20116-CV-638, 2021 V.I. LEXIS 107, at *2 (V.I. Super. Mar. 29, 2021) (citing Arlington Funding Servs., Inc. v. Geigel, 51 V.I. 118 (V.I. 2009) (imputing agent's knowledge to principal).

body." LMC's Ex. 37 in Supp. of S.U.F., Milligan Dep. pp 109: 13-16; 113: 1-11.

Periera worked at the Refinery for over 20 years (1970s to 2000). Pls.' Resp. to LMC's S.U.F. ¶ 68, 22.   He recalls that, during union meetings at the Refinery, employees discussed the presence of bauxite, alumina, and other dusts at the plant. LMC's Ex. 39 in Supp. of S.U.F., Periera Dep, 45: 1 – 8.   Giddings worked at the Refinery for approximately 4 years (1981 to 1985). Pls.' Resp. to LMC's S.U.F. ¶ 56, 19.   He knew he was exposed to alumina, bauxite, and caustic dust. LMC's Ex. 35, Giddings Dep. at 126:24; 127; 1-3.   He recalls seeing writings on boxes that contained insulation covering saying "this product contains asbestos." Id. at 142: 16-24; 143: 6-14.   Francis worked at the Refinery for approximately 3 years (1980 to 1983). Pls.' Resp. to LMC's S.U.F. ¶ 50, 18.   About a year after leaving the Refinery, a co-worker told him there was asbestos at the Refinery. LMC's Ex. 33 in Supp. of S.U.F, Francis Dep. pp 25: 13-24; 26:3-5.   Thus, each Plaintiff knew, even before taking the x-ray test and before issuance of Dr. John's report, that they (or in Milligan's case, her husband) were exposed to asbestos at the Refinery.   Upon learning that they had asbestosis caused by exposure to asbestos they knew, or should have known, that employment at the Refinery was the source of their asbestos exposure.   Put another way, upon receipt of Dr. John's report, Plaintiffs possessed sufficient critical facts to put them on notice that a wrong had been committed and that they need to investigate to determine whether they are entitled to redress. Marsh-Monsanto, 66 V.I. at 375 (V.I. 2017).   In light of these

undisputed facts, this Court concludes, as a matter of law, that the discovery rule's equitable tolling stopped, the two-year statute of limitations was triggered, and Plaintiffs' causes of action for their asbestos-related claims accrued, on the dates they received Dr. John's report. See Dabaldo v. URS Energy & Constr. 85 A.3d 73, 79 (Del. 2014)) (citing In re Asbestos Litigation, 673 A.2d 159, 162 (Del. 1996) (holding, "[T]he two-year statute of limitations on asbestos-related personal injury claims 'begins to run when the plaintiff is chargeable with knowledge that his condition is attributable to asbestos exposure.'").

### 3) Plaintiffs have Failed to Present Affirmative Evidence From Which a Jury Might Find That They Did Not know the Cause of Their Injuries Until After Receipt of Dr. John's Report.

¶8    In light of LMC's showing, Plaintiffs now bear the burden to present affirmative evidence that a genuine issue of material fact exists regarding when they became aware of the cause of their injuries. Aubain, 70 V.I. at 943.  They tacitly concede Dr. John's reports alerted them to their injuries, but strongly argue it did not alert them to the cause.  Plaintiffs also concede knowledge of their exposure to dusts from the Refinery but deny knowledge that it was dangerous. These concessions appear in their arguments as follows:

> None of the ARTDC plaintiffs was aware of the dangers associated with exposure to asbestos, alumina, and bauxite dusts during the period when they (or in the case of Mrs. Milligan, her husband) worked at the Alumina Plant . . .

> This did not change after Dr. John reviewed those x-rays and completed his B-Readings and impressions of the ARTDC Plaintiffs.

> The ARTDC Plaintiffs still did not know the cause of their injuries, and their counsel didn't either. It was not until the ARTDC Plaintiffs went to take their PFTs and met with their counsel that the connection between the injuries and their cause was made for the first time. This is because each of the ARTDC Plaintiffs met with someone from their counsel's firm to discuss their work history and exposures. It was only then that the ARTDC Plaintiffs were able to connect their lung injuries to the exposures from the Alumina Plant.

Opp. to Mot. for Summ. J. 11-12. The dates of Dr. John's reports, Plaintiffs' meeting with counsel and filing of the complaints are as follows:

| Plaintiff | Date of John's Report | Date of Meeting With Counsel | Date Complaint Filed |
|---|---|---|---|
| Milligan | 02/26/19 | 06/09/19 | 06/04/21 |
| Pereira | 03/23/19 | 07/21/19 | 07/15/21 |
| Giddings | 06/28/19 | 08/18/19 | 08/13/21 |
| Francis | 02/26/19 | 02/28/20 | 02/26/22 |

Exs. 85, 88, 82, 78, Defs.' Exhibits Submitted in Support of Dispositive Motions (Reports by C. John); Ex. 142, Pate Decl. in Supp. of Pls.' Opp. to Mot. for Summ. J. Based on Statute of Limitations; Compl. Nos. 2021-450, 2021-549, 2021-641, 2022-083. Plaintiffs thus argue that each of their "claims were tolled until after they underwent the PFTs and, on that same day, met with their counsel to discuss their work and exposure histories." Pls.' Opp. to Mot. for Summ. J. 12.

According to Plaintiffs, the date they met with counsel was "the earliest date on which the ARTDC Plaintiffs could have learned of the cause of that injury and the potential parties responsible for it." Id. They maintain their complaints were

filed within two years of the meetings and hence were timely. Id.  Plaintiffs' reading of the discovery rule is fraught with the potential for abuse.

Plaintiffs identify no additional information obtained between the date of Dr. John's report and their meeting with counsel other than the results of their (PFTs). The PFTs, however, were unnecessary to diagnose Plaintiffs' injuries. Pls.' Resp. to LMC's S.U.F. ¶ 166.  In fact, the PFTs' results contained no impression, diagnosis nor cause of any disease. LMC's Exs. 79, 83, 86, 89 Submitted in Supp. of S.U.F. (PFT tests for Francis, Giddings, Milligan and Pereira).  They therefore added nothing new to Plaintiffs' knowledge of the cause of their injuries and are irrelevant to the discovery rule analysis.

It may well be that no connection was made between Plaintiffs' injuries and exposures at the Refinery until their meetings with counsel.  However, nothing in the discovery rule bestows blanket discretion upon a prospective plaintiff (or his counsel/agent) to arbitrarily select a meeting date to discuss information they already possess.  Plaintiffs have identified nothing new they learned during their meetings with counsel that was unknown to them on the dates of Dr. John's reports.  To interpret the discovery rule as tolling the limitations statute until a plaintiff meets with his counsel to discuss information, they already possess is to permit plaintiffs to manipulate the statute's triggering date.  Such an interpretation offends the principles of fair play and substantial justice.  The more just rule is that the clock is triggered upon receipt of all information necessary to inform a plaintiff

that he has an injury and the cause thereof, not the date upon which he chooses to discuss the information with counsel. The latter would permit arbitrary delays or extensions of triggering dates of the limitations statute as occurred here: 2 months (Giddings); 3 months (Milligan); 4 months (Pereira); 1 year (Francis). Plaintiffs are reminded that the limitations statute is not tolled until the plaintiff acquires all necessary information to commence a lawsuit. The Third Circuit explained this point when it interpreted the Supreme Court's ruling in U.S. v. Kubrick, 44 U.S. 111, (1979) stating:

> [T]he accrual date is not postponed [by the discovery rule] until the injured party knows every fact necessary to bring his action. Rather, the Court indicated that the crucial question in determining the accrual date for statute of limitations purposes was whether the injured party had sufficient notice of invasion of his legal rights to require that he investigate and make a timely claim or risk its loss. Once the injured party is put on notice, the burden is on him to determine within the limitations period whether any party may be liable to him.

Zeleznik v. United States, 770 F.2d 20, 23 (3d Cir. 1985). This Court concurs with the Third Circuit's rationale and hereby applies it to the discovery rule. Under this analysis, Plaintiffs' asbestos-related claims accrued upon receipt of Dr. John's reports. Since their complaints were filed beyond two years of such receipt, they were untimely.

### 4) Plaintiffs' Bauxite and Alumina-Related Claims Are Subject to an Independent Statute of Limitations Analysis.

Plaintiffs alternatively argue that regardless of when tolling stopped on their asbestos-related injuries, "the limitations period for bauxite and alumina-related

injury remained tolled after receiving Dr. John's impressions." Pls.' Opp. to Mot. for Summ. J. 14. In essence Plaintiffs argue for a separate tolling analysis with respect to their bauxite and alumina-related claims.[11] LMC responds the discovery rule does not require "connections be drawn between each specific alleged cause of the injury at issue" before tolling ends. LMC's Reply to Pls.' Opp. to Mot. for Summ. J. 7 (21-CV-450), p 6 (21-CV-549), p 6 (21-CV-641), p 7 (22-CV-083). It further argues that Dr. John's findings that Plaintiffs had pneumoconiosis coupled with their knowledge of exposure to bauxite, alumina and other dusts at the Refinery were sufficient to put them on notice they had an injury cause by another, and they needed to investigate. Id. As explained below, however, the issue transcends separate causes. It involves separate injuries as well.

Plaintiffs' alternative argument raises the issue: whether asbestosis and MDP are separate and distinct diseases that require separate analyses under the discovery rule. No Virgin Islands Court has addressed such separate disease rule. Here, Plaintiffs claim to suffer from pneumoconiosis as a result of exposure

---

[11] Plaintiffs argue this Court defined the issue, in a strikingly similar case (i.e., Burt v Lockheed Martin Corp., Et. Al., SX-2021-CV-548), as whether a genuine factual issue existed as to when the plaintiff knew or should have known he had an asbestos-related injury. Pls.' Opp. to Mot. for Summ. J. 14. They contrast this issue with the circumstances here, where they now seek a separate tolling analysis for their bauxite and alumina-related claims. This issue was not addressed in Burt, nor did the plaintiff there seek any such separate tolling analysis. Accordingly, the Burt case has no bearing on Plaintiffs' claim here that a separate tolling analysis should apply to their bauxite and alumina-related claims.

to asbestos (as well as other materials). Compls. Nos. 2021-450, ¶¶ 10-12, 2; 2021-549, ¶¶ 9 – 11, 2; 2021-641, ¶¶ 8 – 10, 2; 2022-083, ¶¶ 9 and 12, 2.   They claim asbestos-related injuries only in Counts 1, 2 and 7 of their complaints.   As explained above, those claims are untimely since Plaintiffs were put on notice they had <u>asbestosis</u> caused by their exposure to asbestos more than two years before they filed their complaints.

However, Plaintiffs also claim, in all counts against LMC (i.e., 1 through 7), to suffer "harm and damages" caused by their exposure to bauxite (plus alumina dusts and caustic fumes).   Specifically, they claim to have (MDP) caused by their inhalation of bauxite dust from the Refinery. Pls.' Resp. to LMC's S.U.F. ¶ 47. Pneumoconiosis is a group of lung diseases caused by inhaling dust. <u>www.cdc.gov/niosh/topics/pneumoconiosis/default.html</u>; <u>www.webmd.com/what-is-pneumoconiosis</u>.   It includes asbestosis and MDP. Pls.' Resp. to LMC's S.U.F. ¶ 73.   The commonly understood meaning of asbestosis is a disease caused by breathing in asbestos dust. <u>See</u> <u>www.oxfordlearnersdictionries.com</u>.   Dr. John diagnosed each plaintiff with having MDP based, in part, upon their exposure to asbestos and bauxite. Exs. 77, 81, 84, 87, LMC's Exs. Submitted in Supp. of Dispositive Mots. (Reports by C. John dated 05/30/23).   It is thus apparent that asbestosis and MDP, though grouped under the same lung disease category, i.e., pneumoconiosis, are separate diseases with separate causes and hence should be afforded separate statute of limitations analyses.

Other courts have found similar diseases to be separated under analogous circumstances thus requiring separate limitations analyses. See Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, 112 (D.C. 1982) (holding that "the time to commence litigation does not begin to run on a separate and distinct disease until that disease becomes manifest."); Fusaro v. Porter-Hayden Co., 548 N.Y.S. 2d 856, 860) (N.Y. Sup. Ct. 1989) (concluding "the statute of limitations starts to run anew upon the discovery of a second injury," i.e., mesothelioma a separate disease from asbestosis.); McNeil v. Owens-Corning Fiberglass Corp., 680 A.2d 1145, 1148 (Pa. Sup. Ct. 1996) (stating "clearly, the cancer and non-cancer diseases in the current case constitute separate claims."); Pustejovsky v. Rapid-American Corp., 35 S.W. 3d 643, (Tex. Sup. Ct. 2000); (holding, where the plaintiff settled a non-malignant asbestosis case, "the diagnosis of a malignant asbestos-related condition creates a new cause of action, and the statute of limitations governing the malignant asbestos-related condition begins when a plaintiff's symptoms manifest themselves . . ."); Arpin v. Conrail, 75 N.E. 3d 948, 954 (Ohio Ct. App. 2016) (stating "Indeed, it has been recognized that asbestos and asbestos-related cancer, although both caused by asbestos exposure, are separate and distinct diseases for which the statute of limitations runs separately." . . . "There is a growing trend among states to apply the separate disease rule, also known as the 'two-disease rule', and state and federal court decisions have applied the rule to federal causes of action in the asbestos context."); and

Vuksanovich v. Airbus Ams. Inc., 608 F. Supp. 3d 92, 104 (S.D.N.Y. 2022) (recognizing that New York employs a second or two injury rule "which preserves the timeliness of an exposure-related injury that is "separate and distinct" from an earlier time-barred injury that originated from the same source."). Subjecting a separate injury to an independent statute of limitations analysis, as many courts do, is rational and just. Until a disease is diagnosed, discovered, or otherwise reported to a plaintiff, he has no awareness of the disease or injury or the possibility of a future need to file a lawsuit. It would be unfair to end tolling for filing a case involving a disease before it becomes manifest or before a plaintiff should know he is suffering therefrom. As one court puts it, "it would be unreasonable and unfair to allow the manifestation of one disease caused by exposure to asbestos to preclude recovery for a second, unrelated disease also caused by exposure to asbestos." Potts v. Celotex Corp., 796 S.W. 2d 678, 685 (Tenn. 1990). Some of the cases cited above found diseases to be separate, even though they had a common cause. Here asbestosis and MDP are separate diseases with separate causes. This Court thus holds that separate injuries stemming from separate causes require separate statute of limitations analyses. Accordingly, Plaintiffs' claims for each illness is subject to an independent statute of limitations analyses.[12]

---

[12] At the very least, the separateness of asbestosis and MDP is a material question of fact and hence precludes the issuance of a summary judgment.

**5) Plaintiffs' Bauxite and Alumina-Related Claims Were Timely Filed.**

Plaintiffs claim the cause of their pneumoconiosis became evident on the date they met with counsel after Dr. John read their x-rays (i.e., 02/28/20 for Francis; 08/18/19 for Giddings; 06/09/19 for Milligan; and 07/21/19 for Pereira).[13] Pls.' Resp. to LMC's S.U.F. ¶¶ 53, 58, 65, 70; Ex. 142, Decl. of R. Pate. This claim evidently applies to both their asbestos and bauxite/alumina-related claims. The only other record evidence regarding when they would have been alerted to a bauxite-related injury (i.e., MDP caused by inhaling bauxite) is Dr. John's post-complaint reports. Exs. 77, 81, 84, 87, LMC's Exs. Submitted in Supp. of Dispositive Mots. (Reports by C. John dated 05/30/23). As explained above, Plaintiffs' complaints were clearly filed within two years of their meetings with counsel and would be timely as to their bauxite and alumina-related claims.

LMC counters that Dr. John's earlier impressions specifically sets forth that Plaintiffs' x-rays were diagnostic of pneumoconiosis and asbestosis. LMC's Reply, p 7 (2021-450), p 6-7 (2021-549), p 6 21-641), p 7 2022-083. The impressions, it claims, coupled with Plaintiffs' knowledge of their (or Mr. Milligan's) work histories put them on notice they had a lung injury caused by another which they needed to investigate. Id. However, nothing in Dr. John's impressions could have alerted

---

[13] Other than Plaintiffs' concession that they learned of their injuries and connected them to a source during their meeting with counsel after Dr. John's x-ray readings, it is unclear what the precise pre-complaint source of their knowledge regarding MDP is.

Plaintiffs that they had a bauxite or alumina-related injury. His reports speak about asbestosis and its cause, i.e., exposure to asbestos. They do not mention bauxite, alumina dust, or "mixed dust pneumoconiosis." Even if Plaintiffs were aware they were exposed to bauxite or alumina, Dr. John's reports do not alert them to any injury caused by such exposure. See Pichierri v. Crowley, 59 V.I. 973, 978 (V.I. 2013) (stating "application of the equitable discovery rule tolls the statute of limitations when the injury or its cause is not immediately evident to the victim.") citing Joseph, 867 F.2d at 182). Plaintiff raised and established the applicability of the discovery rule to its latent disease claims. See Vitalo v. Cabot Corp., 399 F.3d 536, 543 (3d Cir. 2005) (stating "[p]laintiffs seeking the benefit of the discovery rule bear the burden of establishing its applicability."). As LMC is the party moving for summary judgment, it now bears the burden to show tolling ended under the rule more than two years before Plaintiffs' complaints were filed. See Mulley v. Texas. Cap. Holdings, LLC, No. 14-21-00340-CV, 2023 Tex. App. LEXIS 2748, at *3-4 (3d Cir. Apr. 27, 2023) (stating, a defendant moving for summary judgment based on a statute of limitations defense has the burden to conclusively establish that defense. . . citations omitted. . . "The defendant/movant must prove when the claim accrued and, if the plaintiff pleads the discovery rule, then the defendant/movant must conclusively negate it."). LMC has failed to meet this burden. Accordingly, Dr. John's reports (i.e., impressions) did not trigger the statute of limitations for Plaintiffs' bauxite and alumina-related injuries. Their

complaints were thus timely filed with respect to those claims.

## CONCLUSION

¶25    Viewing the pleadings, affidavits, and other evidence submitted in support of, and opposition to, the summary judgment motion in Plaintiff's favor, this Court concludes that there is no genuine issue of material fact regarding when Plaintiffs' causes of action arose for their asbestos-related claims (reflected in Counts 1, 2 and 7).   As a matter of law, those claims were filed more than two years after the cause of action arose and are thus untimely.   The Court will thus grant defendant LMC's motion for summary judgment as to those claims.

The Court further finds that there is no genuine issue of fact as to when Plaintiffs' bauxite and alumina-related claims arose; nor as to whether such injuries are separate to their asbestos-related injuries.   As a matter of law, those claims (reflected in Counts 1 through 7) were timely filed.   The Court will thus deny defendant LMC's motion for summary judgment as to them.   An order consistent herewith will be entered contemporaneously.

DATE: November 30, 2023

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

ATTEST:

TAMARA CHARLES
Clerk of the Court

*Paula Clayton*
_____
COURT CLERK III
_____*November 30, 2023*_____
DATE



IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

November 30, 2023 02:00 PM
SX-2022-MC-00027
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **IN RE: ALUMINA REFINERY TOXIC DUST CLAIMS** | **SX-2022-MC-027 (Re: Nos. 21-450, 21-549, 21-641; 22-083)** |

**ORDER REGARDING LMC's MOTION FOR**
**SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS**

This matter came before the Court on Lockheed Martin's Corp.'s (LMC's) Motions for Summary Judgment Based on Statute of Limitations filed August 7, 2023, Plaintiffs' Opposition thereto filed on August 22, 2023, and LMC's Replies filed on September 1, 2023. Consistent with the Memorandum Opinion filed in this matter on even date herewith, it is hereby

ORDERED that **LMC's Motion for Summary Judgment Based on the Statute of Limitations is GRANTED as to Plaintiffs' asbestos-related claims (for injuries allegedly based on asbestosis) reflected in Counts 1, 2 and 7 of their complaints and such claims are hereby stricken therefrom**; and it is further

ORDERED that **LMC's Motion for Summary Judgment Based on the Statute of Limitations is DENIED as to Plaintiffs' bauxite and alumina-related claims reflected in Counts 1 through 7 of their complaints.**

In Re: Alumina Refinery Toxic Dust Claims, SX-22-MC-27
2021 VI Super 71P
Order re Motion for Summary Judgment
Based on the Statute of Limitations
Page 2

DATE: November 30, 2023

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

ATTEST:
TAMARA CHARLES
CLERK OF THE COURT

_Paula Clayton_
COURT CLERK III
_November 30, 2023_
DATE